Patricia A. RUETHER, Respondent,

v.

STATE of Minnesota, Mankato State University, Self–Insured, Relator,

and

Blue Cross/Blue Shield of Minnesota, Intervenor, Respondent.

No. Cl–89–1993.

Supreme Court of Minnesota.

May 18, 1990.

Candice E. Hektner, Christopher E. Celichowski, Chadwick, Johnson & Condon, Minneapolis, for relator.

Ruth M. Harvey, Blethen, Gage & Krause, Mankato, for Patricia Reuther.

Indru Advani, St. Paul, for Blue Cross/Blue Shield.

COYNE, Justice.

We review by certiorari a decision of the Workers' Compensation Court of Appeals reversing the compensation judge's denial of benefits. The WCCA affirmed the compensation judge's determination that the employee had not sustained a compensable occupational disease, but it found that the employee had sustained a compensable brain injury as a result of contact with toxic chemicals at work and awarded wage loss benefits. We reverse.

After working as a medical technician in the Mankato State University Student Health Service for about eight years, the employee took a leave of absence in order to complete the requirements for a bachelor of science degree in medical technology. On her return to Mankato State after obtaining her degree, the employee's former job in the health service was unavailable. In March 1985 she accepted a lower paying position as a laboratory assistant in the chemistry department. Over the next 14 months the employee developed a number of symptoms, including headaches, gastrointestinal pain, shortness of breath, numbness or tingling in her hands and feet, chest pain, dizziness, a burning sensation in her throat, difficulty swallowing, visual disturbances, muscular shaking, memory block problems, limping, and fatigue, all of which she attributed to a work-related acquired intolerance to chemicals. The employee identified three episodes of exposure to certain chemicals or chemical compounds. She also complained about the ventilation system in the chemistry department, but an industrial hygiene field investigation did not reveal any OSHA violations or even detectable amounts of organic solvents, carbon monoxide, benzene or methyl alcohol in the chemistry laboratory and stockroom.

In November 1985 the employee sought treatment of her symptoms at the University of Minnesota hospitals. When the results of the diagnostic tests conducted there were all in the normal range and further consultation did not result in the diagnosis of some ailment, the employee consulted Dr. George Kroker of La Crosse, Wisconsin, an allergist and "clinical ecologist", who diagnosed employee's problem as "environmental chemical sensitivity syndrome"[1] and concluded that the employee was temporarily totally disabled as a result of chemical exposure in her employment.

---

1. The employee's symptom complex is also known as "multiple chemical sensitivities" or MCS and has been defined as "an acquired disorder characterized by recurrent symptoms, referable to multiple organ systems, occurring in response to demonstrable exposure to many chemically unrelated compounds at doses far below those established in the general population to cause harmful effects. No single widely accepted test of physiologic function can be shown to correlate with symptoms." Cullen, *The Worker with Multiple Chemical Sensitivities: An Overview*, in 2 Occupational Medicine: State of the Art Reviews 655, 657 (1987).

The parties do not seek a determination here of the compensability of this syndrome as an occupational disease pursuant to the Workers' Compensation Act.

In December 1986, as a result of the employee's application for social security disability benefits, the employee was examined by a neurologist who found her to be medically normal and who was of the opinion that employee's subjective complaints were caused by a psychiatric disorder.

The employee's condition improved following participation early in 1987 in a chemical detoxification program at HealthMed in Los Angeles, California. In the fall, however, employee's condition worsened, and Dr. Kroker referred her to Dr. Vernon Varner, a psychiatrist who practices in Iowa City, Iowa. Dr. Varner diagnosed a "chemically acquired immune disregulated syndrome or immune hypersensitivity syndrome" and brain damage causally related to her chemical exposure at Mankato State. Dr. Varner later buttressed his diagnosis with an EEG, which was interpreted as indicating a temporal lobe seizure disorder, although a CT scan revealed no abnormality.

After the employee had instituted these proceedings alleging that she had suffered a work-related "chemically induced disease, ecological illness," employee was examined by Dr. James Vaccarella, an allergist, Dr. John Shronts, an internist, and Dr. Brian Krasnow, a neurologist, none of whom could find any medical or organic basis for employee's complaints. The results of the allergy tests administered by Dr. Vaccarella were all negative, and he testified that the orthodox medical community did not accept the diagnosis of environmental chemical sensitivity syndrome because there was no proof of a cause and effect relationship. Dr. Shronts also testified that environmental chemical sensitivity syndrome was not an accepted diagnosis in internal medicine and that the testing used by clinical ecologists was controversial. Dr. Krasnow interpreted an EEG taken in July 1988 as normal, and although the employee was then taking anti-seizure medication, Dr. Krasnow was of the opinion that the exceedingly small dose was not likely to affect the results of the EEG.

The compensation judge found that the employee suffered from the symptom complex known as "multiple chemical sensitivities", but she denied benefits on the ground that the employee's condition was not caused by her employment but was an ordinary disease of life to which the general public is equally exposed outside of employment. On appeal, the WCCA affirmed the determination that the employee had not sustained a compensable occupational disease, but the WCCA went on to declare that the compensation judge was required to accept what the WCCA characterized as uncontroverted evidence of a brain injury and to award benefits based on that finding.

Because the WCCA was apparently persuaded that the compensation judge's decision rested in large measure on her erroneous finding that Dr. Vernon Varner lacked the professional qualifications essential to the diagnosis of organic brain injuries, we are called upon to address not only the propriety of the disqualification of Dr. Varner's opinion but also the impact of that determination on the compensation judge's decision.

■ The qualifications of an expert do not usually go to the admissibility of the expert's opinion but merely to its weight. *E.g., Hagen v. Swenson,* 306 Minn. 527, 528, 236 N.W.2d 161, 162 (1975). For example, this court has held that the fact that a resident physician is not licensed to practice medicine is not itself a reason to disqualify the witness from testifying. *Cornfeldt v. Tongen,* 262 N.W.2d 684, 696 (Minn.1977). Contrary to the compensation judge's finding, Dr. Varner is board certified in neurology as well as psychiatry. Accordingly, we agree with the WCCA that the compensation judge erred in finding that Dr. Varner lacked professional qualifications to express an opinion regarding brain disorders.

But the fact that Dr. Varner is possessed of the requisite educational qualifications to render an admissible opinion does not compel its acceptance by the finder of fact. Having decided that Dr. Varner was qualified to testify as an expert, the WCCA went on to rule that although the compensation judge was justified in rejecting Dr.

Varner's opinion that employee's multiple chemical sensitivities were causally related to her employment, she must accept his opinion that the employee had sustained an organic brain injury arising out of and in the course of her employment.

▮ We have, of course, held that the finder of fact in a workers' compensation proceeding is not free to disregard unopposed medical testimony because such testimony concerns issues not within the realm of knowledge of the fact finder. *Olson v. Midwest Printing Co.*, 347 N.W.2d 43, 46 (Minn.1984). The WCCA characterized Dr. Varner's testimony that the employee had sustained a brain injury as undisputed and uncontradicted, but a review of the record reveals that the existence of an organic basis for the employee's condition and its connection to the employment were both contradicted and in sharp dispute. Moreover, despite her finding that Dr. Varner was not qualified, the compensation judge did in fact assess and consider his testimony. Our review of the record convinces us that the compensation judge's findings that Dr. Varner's opinions regarding the employee's condition and causal relationship were lacking in medical and factual foundation are supported by substantial evidence, as are her findings that the employee did not prove by a preponderance of the evidence that her employment caused or substantially contributed to her condition. Hence, her findings should have been left undisturbed. *Hengemuhle v. Long Prairie Jaycees*, 358 N.W.2d 54, 59–60 (Minn.1984). Only the EEG taken at Dr. Varner's order following his diagnosis of brain damage was ever interpreted as indicating any abnormality. That indication was not supported by the CT scan; and an earlier EEG taken on March 10, 1987 while employee was a patient at HealthMed in Los Angeles was normal, as was an EEG administered in July 1988, subsequent to that ordered by Dr. Varner. Inasmuch as the EEG interpreted as indicating the presence of an abnormality was sandwiched between two EEG's interpreted as normal, the WCCA's evaluation of the evidence—

> While the opinion of Dr. Krasnow [who administered the third EEG] may be valid as a medical diagnosis, it fails to account for the abnormal EEG objectively inviolable as legal evidence of personal injury.

—is incomprehensible. To totally disregard the evidence of two normal EEG's, while characterizing the abnormal EEG as "objectively inviolable" is shocking. Furthermore, tests of the employee's blood, hair and tissue for heavy metal and toxic chemical exposure resulted in no abnormal findings. There was also evidence that the employee does not exhibit the symptoms of exposure to toxic substances, which include a specific kind of uncoordinated gait known as ataxia, consistently slurry speech, muscle weakness of a consistent and specific distribution, balance problems on an on-going basis, gross abnormalities in judgment, chronic symmetric numbness in hands and feet, and gross mental changes varying from vague concentration difficulties to dementia.

A conflict of this magnitude can hardly support a determination that Dr. Varner's testimony was unopposed. We have frequently had occasion to point out that it is axiomatic that a conflict in the opinions of expert medical witnesses is to be resolved by the trier of fact. *Fryhling v. Acrometal Products, Inc.*, 269 N.W.2d 744, 747 (Minn.1978). As we said in *Golob v. Buckingham Hotel*, 244 Minn. 301, 304–05, 69 N.W.2d 636, 639 (1955):

> [U]ntil the time comes when medical knowledge has progressed to such a point that experts in the field of medicine can agree, causal relation in determining compensable injury or disease will have to remain in the province of the trier of fact. Where qualified medical witnesses differ as they do here, it ordinarily is not for us on appeal to say that one is so eminently right and the other so clearly wrong that the fact finder was obliged to accept the opinion of one and discard the opinion of the other. The determination of this question is like the determination of any other question of fact, and it must depend to a large extent upon the credibility attached by the trier of facts to the

opinion and testimony of the various witnesses who are expressing their opinions.

■ Finally, we note that the theory of the employee's claim was that she had acquired an occupational disease. The WCCA, therefore, improperly found that employee had sustained a disabling brain injury, a theory not litigated or addressed by the compensation judge and not appealed to the WCCA. On appeal the WCCA's review is limited to the issues raised by the parties in the notice of appeal. Minn.Stat. § 176.421, subd. 6 (1988).

Reversed.