Scott B. **SCHUETTE**, Relator,

v.

**CITY OF HUTCHINSON**, Self–Insured/Berkley Risk Administrators Company, LLC, Respondent,

and

**HealthPartners, MeritCare Health System, Hutchinson Area Health Care, Medica Health Plans, Intervenors.**

No. A13–0840.

Supreme Court of Minnesota.

March 5, 2014.

Michael L. Garbow, Rodgers & Garbow, P.L.L.C., Bemidji, Minnesota; and Scott

Wilson, Minneapolis, Minnesota, for relator.

Thomas L. Cummings, Allison A. Lindevig, Jardine, Logan & O'Brien, P.L.L.P., Lake Elmo, Minnesota, for respondent.

## OPINION

LILLEHAUG, Justice.

While working as a police officer for the City of Hutchinson, and after responding to an accident, relator Scott B. Schuette developed symptoms that were later diagnosed as post-traumatic stress disorder (PTSD). A compensation judge denied Schuette's workers' compensation claim on the ground that Schuette's PTSD lacked a physical component and thus is not compensable. Applying *Lockwood v. Independent School District No. 877*, 312 N.W.2d 924 (Minn.1981), the Workers' Compensation Court of Appeals (WCCA) affirmed. On appeal from the WCCA, Schuette attacks the compensation judge's findings as contrary to the evidence. In the alternative, he asks that *Lockwood* be overruled. We affirm the WCCA.

### I.

On June 23, 2005, Schuette—then a full-time police officer for the City of Hutchinson (the employer)—responded to an accident at the local high school. A girl had fallen out of a pickup truck. After arriving at the scene, Schuette realized that he knew the victim and her family. Schuette administered CPR and, upon request, drove the victim to the hospital by ambulance.[1] At the hospital, Schuette started to feel ill, and began dry heaving. He felt in a daze, and "nothing was registering."

1. The injuries from the accident Schuette responded to were horrific. While Schuette was administering CPR, the girl's father put pressure on her ear to stop her spinal fluid from leaking. Schuette later noticed some of the girl's brain matter on his uniform. The girl died from her injuries.

Soon after responding to the accident, Schuette began experiencing mental health problems. Schuette lists anxiety, panic attacks, nightmares, flashbacks, hypervigilance, and insomnia as consequences of responding to the accident.

During a mental health evaluation on June 18, 2008, Schuette was diagnosed with PTSD. Since then, 11 health-care professionals have concurred. Schuette also suffers from chronic back and shoulder pain from a fall during a nightmare. At least one doctor attributes the fall to PTSD.

In 2009, Schuette resigned from his position with the employer. He filed a claim petition seeking workers' compensation benefits for PTSD under Minn.Stat. § 176.021, subd. 1 (2012). Schuette also sought compensation for the injury to his back and shoulder as a "consequential injury."

On March 14, 2012, in a hearing before a compensation judge, Schuette argued, with expert support, that PTSD has a dramatic effect on the physical and chemical structure of the brain. According to one of Schuette's experts, a clinical neuropsychologist, a functional MRI revealed abnormalities in the frontal lobe region of Schuette's brain. The employer, with support from two experts—one a clinical psychologist and professor in the department of psychiatry and psychology at the University of Minnesota, and the other a board-certified psychiatrist—disagreed. The employer argued that the scientific literature has not established that PTSD causes a physical injury to the brain.

The compensation judge denied Schuette's claim, finding that Schuette's PTSD "represents a mental disability." In so finding, the compensation judge rejected the opinions of Schuette's experts as unpersuasive and adopted the opinions of the employer's experts. The compensation judge therefore determined that Schuette's PTSD is not a compensable personal injury under Minnesota law.

Schuette appealed to the WCCA, which affirmed unanimously. Citing *Lockwood,* the WCCA noted that a mental injury resulting from mental stimulus is not compensable under the Minnesota Workers' Compensation Act. The WCCA explained that, to be compensable under *Lockwood,* an injury must include a physical component. The WCCA concluded that the compensation judge's findings that Schuette's PTSD did not result in a physical brain injury had substantial evidentiary support.

By writ of certiorari, Schuette sought further review before our court. Schuette maintains that, under *Lockwood,* he suffered a compensable personal injury. In the alternative, Schuette argues that *Lockwood* should be overruled, in part because it results in an application of the Minnesota Workers' Compensation Act that violates his constitutional right to equal protection of the law.

## II.

Schuette's first argument on appeal is that PTSD is a physical brain injury and the compensation judge erred in finding otherwise. But we cannot disturb a compensation judge's findings affirmed by the WCCA unless the findings are manifestly contrary to the evidence or unless the evidence clearly requires reasonable minds to adopt a contrary conclusion. *Hengemuhle v. Long Prairie Jaycees,* 358 N.W.2d 54, 60 (Minn.1984).

Under Minnesota law as of the date of Schuette's injury, "[e]very employer ... [was] liable to pay compensation in every case of *personal injury* or death of an employee arising out of and in the course of employment." Minn.Stat. § 176.021, subd. 1 (emphasis added). "Personal inju-

ry" meant "injury arising out of and in the course of employment and include[d] personal injury caused by *occupational disease*." Minn.Stat. § 176.011, subd. 16 (2012) (emphasis added). "Occupational disease," in turn, was defined as "a disease arising out of and in the course of employment." Minn.Stat. § 176.011, subd. 15(a) (2012).

■ To clarify the meaning of "personal injury" and "occupational disease" in workers' compensation cases involving a mental stimulus or a mental injury, our *Lockwood* decision divided such cases into three cate-. gories: (1) cases in which mental stimulus produces physical injury, (2) cases in which physical stimulus produces mental injury, and (3) cases in which mental stimulus produces mental injury. *Lockwood*, 312 N.W.2d at 926. *Lockwood* and our later case, *Johnson v. Paul's Auto & Truck Sales, Inc.*, 409 N.W.2d 506, 508 (Minn. 1987), made clear that workers' compensation claims based upon the first two categories are covered injuries, but claims in which a mental stimulus results in mental injury are not covered. Further, the presence of physical symptoms does not convert a claim based on mental injury caused by mental stimulus into a compensable claim. *Johnson*, 409 N.W.2d at 508–09. To be compensable, the physical symptoms must be independently treatable physical injuries.[2]

■ Because the compensability of a mental injury depends upon the *Lockwood*

category in which the injury falls, medical evidence is of paramount importance. In weighing medical evidence, a compensation judge has the discretion as the trier of fact to choose between competing and conflicting medical experts' reports and opinions. *Ruether v. State*, 455 N.W.2d 475, 478 (Minn.1990). Only when the facts assumed by the expert in rendering an opinion are not supported by the evidence will we reverse. *Nord v. City of Cook*, 360 N.W.2d 337, 342–43 (Minn.1985).

■ In this case, the compensation judge's findings, including the finding that Schuette's PTSD is a noncompensable mental injury, are not manifestly contrary to the evidence. Schuette is correct that considerable evidence before the compensation judge supported his position that he sustained a physical brain injury. But the compensation judge was free to choose among conflicting medical experts' opinions, *Ruether*, 455 N.W.2d at 478, and did just that by adopting the opinions of the employer's experts that Schuette's PTSD did not cause a physical brain injury. The employer's experts are qualified medical professionals well versed in the study of PTSD whose opinions were based on professional experience and a thorough examination of the scientific literature. One expert acknowledged that some studies have found evidence of structural differences in the brains of individuals diagnosed with PTSD, but concluded that the scientific evidence remains ambiguous.

---

2.  The 2013 Legislature amended the definition of "personal injury" and "occupational disease" in Minn.Stat. § 176.011, subds. 15–16, to include "mental impairment." Act of May 16, 2013, ch. 70, art. 2, §§ 1–2, 2013 Minn. Laws 362, 367–68 (to be codified at Minn.Stat. § 176.011, subds. 15(a), (d), 16). Mental impairment is defined narrowly and means "a diagnosis of post-traumatic stress disorder." Article 2, Section 1, 2013 Minn. Laws at 368 (to be codified at Minn.Stat.

§ 176.011, subd. 15(d)). In other words, the 2013 amendment now permits workers' compensation claimants with PTSD to recover regardless of PTSD's status as a physical or mental injury. But because this amendment is only effective for employees whose injuries occurred on or after October 1, 2013, art. 2, § 14(a), 2013 Minn. Laws at 377, it is inapplicable to Schuette's case. Other than this limited exception for PTSD, the 2013 amendment does not disturb the *Lockwood* framework.

Because the compensation judge's findings are not manifestly contrary to the evidence, Schuette did not suffer a compensable personal injury under *Lockwood.*[3]

## III.

■■■ Schuette's second argument is that our *Lockwood* decision should be overruled because it improperly excluded mental injury caused by mental stimulus from the statutory term "personal injury." Schuette also posits that, if *Lockwood* is not overruled, Minn.Stat. § 176.021, subd. 1, of the Workers' Compensation Act violates his federal and state equal-protection rights. Questions of law such as this are reviewed de novo. *See Roemhildt v. Gresser Cos.,* 729 N.W.2d 289, 292 (Minn.2007); *ILHC of Eagan, LLC v. Cnty. of Dakota,* 693 N.W.2d 412, 421 (Minn.2005). "We presume statutes to be constitutional and exercise the power to declare a statute unconstitutional 'with extreme caution and only when absolutely necessary.'" *ILHC of Eagan,* 693 N.W.2d at 421 (quoting *In re Haggerty,* 448 N.W.2d 363, 364 (Minn. 1989)).

### A.

■■■ We decline Schuette's request to overrule *Lockwood,* and, necessarily, *Johnson,* on the theory that these decisions misconstrued the statutory term "personal injury." The doctrine of stare decisis directs us to adhere to our former decisions in order to promote the stability of the law and the integrity of the judicial process. *Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 63, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996); *Oanes v. Allstate Ins. Co.,* 617 N.W.2d 401, 406 (Minn.2000). We are extremely reluctant to overrule our precedent absent "a compelling reason." *State v. Martin,* 773 N.W.2d 89, 98 (Minn. 2009). The doctrine of stare decisis has special force in the area of statutory interpretation because the Legislature is free to alter what we have done. *Hohn v. United States,* 524 U.S. 236, 251, 118 S.Ct. 1969, 141 L.Ed.2d 242 (1998).

Schuette fails to provide a compelling reason to overrule *Lockwood* and *Johnson.* We are as sensitive today as we were in *Lockwood* that mental injury caused by mental stimulus "is as real as any other kind of disablement." *Lockwood,* 312 N.W.2d at 926. And we continue to recognize that there is an increasingly blurred distinction between physical and mental injuries. *See id.* But *Lockwood* and *Johnson* expressly left to the Legislature the "major policy determination" whether to expand the Workers' Compensation Act to include mental injury caused by mental stimulus. *Lockwood,* 312 N.W.2d at 927 ("If [the Legislature] wishes to extend workers' compensation coverage to mental disability caused by work-related mental stress without physical trauma, it is free to articulate that intent clearly."); *see also Johnson,* 409 N.W.2d at 509. *Lockwood*

---

3. It is at least arguable that the injury to Schuette's back and shoulder was caused by a PTSD nightmare and therefore might be compensable under *Lockwood,* which allows compensation for physical injuries that result from mental stimulus. *See Egeland v. City of Minneapolis,* 344 N.W.2d 597, 604–05 (Minn. 1984) (holding that a police officer's ulcer that developed due to workplace stress was compensable); *Aker v. State, Dep't. of Natural Res.,* 282 N.W.2d 533, 536 (Minn.1979) (concluding that a heart attack caused by emotional stress was compensable). This precise issue is not before us, however, because Schuette did not raise it in his notice of appeal to the WCCA, *see* Minn.Stat. § 176.421, subd. 6 (2012) (limiting the WCCA's review to issues raised by the parties), or argue it in his briefs to the WCCA or this court. Instead, Schuette maintained that the injury to his back and shoulder was compensable as a "consequential injury" only if his PTSD was first compensable as a physical brain injury.

has been the law of Minnesota for over 30 years. In *Johnson*, we expressly declined to overrule it. *Johnson*, 409 N.W.2d at 509. Only recently has the Legislature altered the law as it relates to coverage for PTSD, and then only prospectively. Act of May 16, 2013, ch. 70, art. 2, §§ 1–2, 14(a), 2013 Minn. Laws at 367–68, 377. Applying the doctrine of stare decisis, we decline Schuette's request to change the law.

### B.

We turn next to Schuette's argument that *Lockwood*, and, necessarily, *Johnson*, should be overruled because they result in an application of the Workers' Compensation Act that violates his right to equal protection of the law. The United States Constitution guarantees that no state will "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Minnesota Constitution guarantees that "[n]o member of this state shall be disfranchised or deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land or the judgment of his peers." Minn. Const. art. I, § 2. Both guarantees "begin with the mandate that all similarly situated individuals shall be treated alike." *Kolton v. Cnty. of Anoka*, 645 N.W.2d 403, 411 (Minn.2002) (citation omitted) (internal quotation marks omitted).

We generally assess constitutional challenges to the coverage of workers' compensation statutes using a form of rational-basis review. *Gluba ex rel. Gluba v. Bitzan & Ohren Masonry*, 735 N.W.2d 713, 720–21 (Minn.2007). To survive an equal protection challenge, a workers' compensation classification must "apply uniformly to all those similarly situated; be necessitated by genuine and substantial distinctions between the two groups; and effectuate the purpose of the law." *Nel-*

*son v. State, Dep't. of Natural Res.*, 305 N.W.2d 317, 319 (Minn.1981).

Schuette concedes that the first prong of the applicable rational-basis test is satisfied: the distinction between physical and mental injuries caused by mental stimulus applies uniformly to all those similarly situated. Therefore, the only remaining questions are whether the classification is necessitated by genuine and substantial distinctions between physical and mental injuries and whether the classification effectuates the purpose of the Minnesota Workers' Compensation Act.

The second prong of our three-part rational-basis test focuses on whether the Legislature "could reasonably have believed in any facts" that would support the challenged workers' compensation classification. *Gluba*, 735 N.W.2d at 723. Given that it is sometimes more difficult to establish causation and proof in cases involving mental injuries from mental stimulus, we cannot say that the Workers' Compensation Act as interpreted by *Lockwood* created an arbitrary distinction between physical and mental injuries. Thus, the law survives the second prong of rational-basis review.

The third and final prong is whether the distinction recognized in *Lockwood* effectuates the purpose of the Workers' Compensation Act. At its core, the Workers' Compensation Act aims "to assure the quick and efficient delivery of indemnity and medical benefits to injured workers at a reasonable cost." Minn.Stat. § 176.001 (2012). In other words, the Workers' Compensation Act is premised on a reasonable tradeoff "between workers' interests on the one hand and employers' interests on the other." *Gluba*, 735 N.W.2d at 725. We cannot say that the classification at issue here disrupts this tradeoff. Indeed, *Lockwood* and *Johnson* held that the distinction between physical

and mental injuries was a matter of public policy that goes to the legislative balancing of costs to employers against the extent of coverage. *Johnson*, 409 N.W.2d at 509; *Lockwood*, 312 N.W.2d at 927.

For these reasons, we hold that the Workers' Compensation Act applicable to Schuette, as interpreted by *Lockwood* and *Johnson*, does not violate his equal-protection rights.

Affirmed.

ANDERSON, J., took no part in the consideration or decision of this case.