STATE OF MINNESOTA

IN SUPREME COURT

A16-0629

Workers' Compensation Court of Appeals                    Lillehaug, J.

Ellen Gianotti,

                    Respondent,

vs.                                                       Filed: February 8, 2017
                                                          Office of Appellate Courts
Independent School District 152 and
RAM Mutual Insurance Co.,

                    Relators,

and

Sanford Health, Essentia Health Systems,
Injured Workers Pharmacy, and Onword Therapy,

                    Intervenors.

————————————————

James W. Balmer, Falsani, Balmer, Peterson, Quinn & Beyer, Duluth, Minnesota, for
respondent.

Howard Y. Held, William R. Moody, Fitch, Johnson, Larson & Held, P.A., Minneapolis,
Minnesota, for relators.

————————————————

1

1.  The Workers' Compensation Court of Appeals (WCCA) erred when it ruled on the forfeited issue of whether a psychologist was competent to provide an expert opinion.

2.  The WCCA erred when it reversed the compensation judge's determination that there was an adequate factual foundation for the psychologist's opinion.

3.  The WCCA erred when it reversed the compensation judge's factual finding that respondent did not suffer a concussion and post-concussive syndrome.

Reversed.

O P I N I O N

LILLEHAUG, Justice.

On October 7, 2014, respondent Ellen Gianotti was working as a school bus monitor for relator Independent School District 152 when the bus in which she was riding, traveling at 15 miles per hour, unexpectedly braked.  The sudden stop caused Gianotti to fall, strike the left side of her head on the bus's front console, and land on her left arm.

Gianotti was taken to the hospital, where she reported pain in her head and left arm, but said she did not lose consciousness from the fall.  A CT scan and X-rays were negative for symptoms of a concussion, and a medical report from Dr. Crider[1] said she had no such symptoms.  Gianotti was diagnosed with a head injury and left arm contusion.

---

[1]  All physicians identified in this opinion are doctors of medicine (M.D.s) unless otherwise noted.

Thereafter, Gianotti saw a series of health providers. We summarize those visits as follows:

- On October 8, 2014, Gianotti saw a second doctor, Dr. Kuhlmann, who noted that she "had no symptoms of concussion" and that she was alert and oriented.

- On October 9, 2014, Gianotti went to a third doctor, Dr. Sampson, with complaints of headaches, confusion, and trouble finding words. A CT scan was negative, but the medical notes stated that Gianotti's self-reported symptoms were "most consistent with post concussion syndrome."

- On October 14, 2014, Gianotti saw a fourth doctor, Dr. Sheldon, who wrote that Gianotti had post-concussive symptoms, and arranged for her to have a neuropsychological assessment.

- On October 23, 2014, Gianotti reported to a health clinic with complaints of dark nasal discharge for five days. Gianotti was unable to replicate the dark discharge at the clinic.

- The same day, Gianotti went to see Dr. Hauge, Ph.D., L.P. (Licensed Psychologist), for her neuropsychological assessment. For the first time, she reported " 'islands' of memory" on the day of the injury. Dr. Hauge conducted a limited battery of tests and noted that Gianotti "had an apparent concussive injury" and was "experiencing multiple symptoms of somatic, cognitive, and emotional-related change" since the injury. Dr. Hauge diagnosed Gianotti with a concussion.

3

- On December 15, 2014, Gianotti saw Dr. Hauge, who referred her for "psychological intervention because of significant emotional distress" since the injury. On December 29, 2014, Gianotti saw Dr. Hauge again, who recommended a Zoloft prescription, which Dr. Sheldon issued the next day.

- On February 16, 2015, Gianotti was seen by Dr. Stone, Psy.D., upon referral by Dr. Hauge, for anxiety therapy. Gianotti reported she had suffered four panic attacks over a one-week period and depression secondary to those attacks. She continued the therapy sessions in the ensuing months.

- On March 28, 2015, Gianotti saw Dr. Paul Arbisi, Ph.D., L.P.,[2] for an independent psychological examination at relators' request. Dr. Arbisi reviewed Gianotti's medical records dating back to 2007, including pre-injury records that were not reviewed by the treating physicians. Those records revealed that Gianotti had taken Zoloft since at least 2007, and Xanax since at least 2009, facts which Gianotti had not fully disclosed to relators and the physicians she saw for the bus injuries. Dr. Arbisi then administered the Minnesota Multiphasic Personality Inventory-2 test to Gianotti, which included a broader battery of tests than those conducted by Dr. Hauge. Dr. Arbisi concluded that Gianotti answered questions "in a manner that was directed towards deliberately presenting herself as an admirable individual who reports suffering from extreme and non-credible psychiatric

---

[2] Dr. Arbisi was also certified by the American Board of Assessment Psychology and the American Board of Professional Psychology. He was not an M.D.

4

symptoms, as well as non-credible memory and cognitive problems." Ultimately, Dr. Arbisi concluded that Gianotti had not suffered a concussion and post-concussive syndrome. He wrote a report to that effect.

- On April 23, 2015, Dr. Carlson conducted an independent orthopedic medical examination of Gianotti at relators' request. Dr. Carlson focused on Gianotti's arm injury and did not conduct any tests relating to a concussion, but noted—apparently solely from speaking with Gianotti and reviewing her medical records—that he believed Gianotti "had a mild post-concussive syndrome, which has resolved."

Taking issue with Dr. Arbisi's report, Drs. Sheldon and Hauge wrote to Gianotti's attorney, stating that Gianotti's symptoms were consistent with a traumatic brain injury and post-concussive syndrome. Dr. Arbisi then submitted a supplemental report based on post-injury psychiatric records he did not originally review, stating that the new information did not change his opinions from the first report.

On May 5, 2015, Gianotti filed a medical request with the workers' compensation division. Gianotti sought coverage for various treatments she was receiving for her injuries, including treatment for emotional and psychological conditions that allegedly developed from her head injury. Relators then filed a Petition to Discontinue Benefits.[3] The two filings were consolidated for a hearing before a compensation judge.

---

[3] On October 20, 2014, the school district's insurer, RAM Mutual Insurance Company, admitted Gianotti's injuries and paid benefits including temporary total disability.

Following the hearing, by Findings and Order, the compensation judge denied Gianotti's request for coverage of emotional and psychological conditions, finding that Gianotti had not suffered a concussion and post-concussive syndrome. The compensation judge relied heavily on the opinion of Dr. Arbisi.

Gianotti appealed specific portions of the compensation judge's decision to the WCCA. Gianotti's notice of appeal specifically raised the issue of "[w]hether the admitted work injury resulted in a concussion or other brain injury" and the compensation judge's "holding that this admitted head injury did not result in concussion or other brain injury."

In Gianotti's briefs to the WCCA, she argued that the opinions of her treating physicians outweighed Dr. Arbisi's opinion. She also argued that Dr. Arbisi's opinion lacked factual foundation, citing Minnesota Rule of Evidence 702, because he had not reviewed a video of the accident and some of Gianotti's post-injury psychiatric records.

At oral argument before the WCCA, the panel sua sponte asked the parties whether Dr. Arbisi was competent to provide an expert opinion, given that he was a psychologist who was not an M.D. Both parties agreed he was competent.[4]

The WCCA reversed the compensation judge's finding that Gianotti did not suffer a concussion and post-concussive syndrome, and vacated the denial of coverage of the emotional and psychological conditions. The WCCA reasoned that: (1) Dr. Arbisi was not competent as an expert; (2) he lacked factual foundation for his opinion because he did not

---

[4] The oral argument was not transcribed, but the parties agree on what was said.

6

review the video; and (3) all the other evidence indicated that Gianotti suffered from post-concussive syndrome. *Gianotti v. Indep. Sch. Dist. 152*, No. WC15-5868, 2016 WL 1637254 (Minn. WCCA Mar. 24, 2016).

Relators petitioned this court for a writ of certiorari. We reverse.

I.

We first address whether the WCCA ruled on a forfeited issue, namely Dr. Arbisi's competence to render an opinion regarding Gianotti's injuries. "[T]he Workers' Compensation Court of Appeals' review is limited to the issues raised by the parties in the notice of appeal." Minn. Stat. § 176.421, subd. 6 (2016); *see also Bradford v. Bureau of Engraving*, 459 N.W.2d 697, 698 (Minn. 1990); *Ruether v. State*, 455 N.W.2d 475, 479 (Minn. 1990). Minnesota Statutes § 176.421, subdivision 3, provides that a notice of appeal must specify "the particular finding of fact or conclusion of law which the appellant claims was unsupported by substantial evidence in view of the entire record as submitted" and "any other ground upon which the appeal is taken."

Gianotti's notice of appeal did not raise the issue of Dr. Arbisi's competence. Instead, Gianotti raised an entirely separate issue: whether she had suffered "a concussion or other brain injury" from her fall.

Gianotti's notice of appeal specifically referenced paragraphs 30, 31, and 33 of the compensation judge's findings, none of which addressed the issue of Dr. Arbisi's competence. Paragraph 30 stated that the compensation judge agreed with Dr. Arbisi that

7

Gianotti's head injury was mild. That paragraph also noted that Gianotti's treating physicians appeared to be basing their conclusions almost entirely on her self-reported symptoms. Paragraph 31 found that Gianotti did not require psychological treatment as a result of the bus incident. That paragraph also found that the costs of the CT scans should be covered by relators. Paragraph 33 found that relators were entitled to discontinue temporary total disability benefits as of the date of the hearing before the compensation judge. None of these paragraphs addressed Dr. Arbisi's competence. Notably, paragraph 28 discussed Dr. Arbisi's credentials, his independent examination of Gianotti, and his conclusions. The compensation judge expressly adopted Dr. Arbisi's opinion in paragraph 29. Gianotti cited neither paragraph in her notice of appeal.

Gianotti's notice of appeal also referenced Orders 1 and 5 of the compensation judge's decision. Order 1 stated that relators could discontinue temporary total disability benefits as of the date of the hearing. Order 5 stated that Gianotti's "claims for payment of treatment expenses for emotional and/or psychological conditions are denied and dismissed," and went on to specify which treatments were denied. Neither order involved Dr. Arbisi's competence.

Gianotti's briefs to the WCCA similarly failed to raise the issue of Dr. Arbisi's competence. Gianotti primarily argued that the opinions of her treating physicians outweighed Dr. Arbisi's opinion. She did not argue that Dr. Arbisi's lack of an M.D. degree rendered him incompetent to provide an expert opinion in the case.

8

Gianotti also argued to the WCCA that, because Dr. Arbisi reviewed neither the video of the incident nor certain post-injury psychiatric records, his opinion lacked factual foundation under Minnesota Rule of Evidence 702. Gianotti now argues that her citation of Rule 702 on this entirely different issue opened the door for the WCCA to conclude that Dr. Arbisi was not competent. But whether an issue has been forfeited depends on the substance of the issue, not on the rule cited. *See DeCook v. Olmsted Med. Ctr., Inc.*, 875 N.W.2d 263, 270 n.6 (Minn. 2016) (analyzing whether the issue presented is "different in kind" to determine whether it was forfeited (quoting *Jacobson v. $55,900 in U.S. Currency*, 728 N.W.2d 510, 522-23 (Minn. 2007))). Here the two issues are entirely different in kind; one is whether Dr. Arbisi generally had the proper expert credentials and education, whereas the other is whether he was sufficiently familiar with the facts of the case.

In sum, because Gianotti's notice of appeal and briefs to the WCCA failed to raise the issue of whether Dr. Arbisi was competent to provide an expert opinion, Gianotti forfeited the issue. The WCCA accordingly erred when it raised and ruled on an issue that was not before it.

## II.

We next address an issue that was not forfeited: whether the WCCA erred when it held that Dr. Arbisi lacked the necessary factual foundation to provide an expert opinion on whether Gianotti had suffered a concussion and post-concussive syndrome. The law on whether an expert's opinion has the proper foundation is well settled. The facts upon which

9

an expert relies for an opinion must be supported by the evidence. *Ruether*, 455 N.W.2d at 478. An expert need not be provided with every possible fact, but must have enough facts to form a reasonable opinion that is not based on speculation or conjecture. *See Wenner v. Gulf Oil Corp.*, 264 N.W.2d 374, 381 (Minn. 1978). The adequacy of foundation for an expert opinion is a decision within the discretion of the trial judge, subject to review for abuse of discretion. *See Gross v. Victoria Station Farms, Inc.*, 578 N.W.2d 757, 760-61 (Minn. 1998).

In this case, the WCCA reversed the compensation judge's ruling for two reasons. First, the WCCA stated that Dr. Arbisi lacked an adequate factual foundation for his opinion because he did not review the video of the injury. Second, the WCCA took issue with "Dr. Arbisi's contention that the employee denied altered consciousness until October 23, 2014."

The WCCA's decision that not viewing the video was somehow dispositive on the adequacy of the foundation for Dr. Arbisi's opinion perplexes us. The WCCA did not explain why the video was probative on the medical consequences of an admitted blow to the head. Nor did it explain why, if the video was determinative of an adequate foundation for a medical opinion, *none* of Gianotti's treating physicians viewed it. The WCCA did not explain why it credited the opinions of other doctors that also did not view the video, but did not reach the same conclusion with respect to Dr. Arbisi's opinion.

Arguably, Dr. Arbisi's opinion had as solid a factual foundation as any other expert

in this case, as he (1) reviewed Gianotti's pre-injury medical history dating back to 2007, including records reviewed by no other doctor; (2) reviewed the majority of Gianotti's post-injury medical records; (3) conducted a significant battery of tests—more rigorous than those conducted by Dr. Hauge; and (4) personally interviewed Gianotti.

Second, the WCCA mischaracterized a sentence from Dr. Arbisi's report about Gianotti's alleged denial of "altered consciousness" and took it out of context. It is true that a later section of Dr. Arbisi's report conflated the self-reported symptoms of October 23 (memory loss) with the symptoms self-reported on October 9 and 14, 2014 (headaches, confusion, and trouble finding words). But Dr. Arbisi had already noted earlier in his report that—other than the "islands" of memory—all of these symptoms were self-reported on October 9 and 14, 2014. The later section made the point that Gianotti did not report any *memory loss* from the day of the accident until October 23, 2014. Thus, a more accurate reading of Dr. Arbisi's report is that Gianotti did not self-report any memory loss on the day of the accident, but rather mentioned this symptom for the first time on October 23, 2014, and that overall her self-reported symptoms were not credible.

The WCCA took the single statement from Dr. Arbisi's 20-page report out of context, and then relied on it to conclude that all of "the facts assumed by the expert are not supported by the evidence." Perhaps Dr. Arbisi could have written in a clearer manner, but that does not discredit the entire report.

11

The compensation judge did not abuse his discretion in finding that Dr. Arbisi had an adequate factual foundation for his opinion. Thus, the WCCA erred when it reversed the compensation judge's decision based primarily on Dr. Arbisi's report.

III.

Finally, we address whether the WCCA erred when it reversed the compensation judge's finding that Gianotti did not suffer a concussion and post-concussive syndrome. In weighing medical evidence, a compensation judge has the discretion as the trier of fact to choose between competing and conflicting medical experts' reports and opinions. *Ruether*, 455 N.W.2d at 478. We reverse when the facts assumed by the expert in rendering an opinion are not supported by the evidence. *Nord v. City of Cook*, 360 N.W.2d 337, 342-43 (Minn. 1985). As we said in *Schuette v. City of Hutchinson*, 843 N.W.2d 233, 237 (Minn. 2014), "the compensation judge was free to choose among conflicting medical experts' opinions" on whether a brain injury had occurred.

On appellate review, if "more than one inference may reasonably be drawn from the evidence, the findings of the compensation judge are to be upheld." *Hengemuhle v. Long Prairie Jaycees*, 358 N.W.2d 54, 60 (Minn. 1984). The WCCA is not "to substitute its view of the evidence for that adopted by the compensation judge if the compensation judge's findings are supported by evidence that a reasonable mind might accept as adequate." *Id.*

Here, the evidence supports the compensation judge's determination that Gianotti did not suffer a concussion and post-concussive syndrome. Because the compensation judge's decision to rely on Dr. Arbisi's opinion was supported by the evidence, the WCCA erred when it reversed the compensation judge's finding that Gianotti did not suffer a concussion and post-concussive syndrome. Therefore, we reverse the WCCA and reinstate the compensation judge's Findings and Order.

Reversed.