**Eddie HUDSON, Respondent,**

v.

**TRILLIUM STAFFING and XL Insurance, with Claims Administered by CorVel Corporation, Relators,**

and

**Medica Health Plans/Optum, Center for Diagnostic Imaging, Hennepin County**

**Medical Center & Physicians, Park Nicollet Health Services, and Park Nicollet Methodist Hospital, Intervenors.**

**A16-2017**

Supreme Court of Minnesota.

Filed: June 7, 2017

Eddie Hudson, Brooklyn Park, Minnesota, pro se.

Douglas J. Brown, Brown & Carlson, P.A., Minneapolis, Minnesota, for relators.

## OPINION

STRAS, Justice.

This case requires us to determine whether the Workers' Compensation Court of Appeals (WCCA) erred in granting respondent Eddie Hudson's petition to vacate an award of workers' compensation benefits. Hudson, who was injured while working for Trillium Staffing, filed a workers' compensation claim that the parties later settled. About a year after the settlement, Hudson filed a petition to vacate the award with the WCCA, which granted Hudson's petition on the ground that his medical condition had substantially

changed in a way that clearly was not, and could not reasonably have been, anticipated. Because the medical opinion underlying the WCCA's decision lacked foundation, we reverse.

## FACTS

The essential facts in this case are undisputed. On April 16, 2014, respondent Eddie Hudson was injured in the course of his employment with Trillium Staffing when the semi-trailer truck that he was driving jackknifed and veered into a ditch. Hudson was treated for three general categories of injuries after the crash: (1) injuries to his neck and low back; (2) a traumatic brain injury; and (3) psychological injuries.

For his neck and low-back injuries, Hudson was treated by Dr. Victor Van Hee, who diagnosed neck and low-back strains. Dr. Van Hee assigned a permanent partial disability (PPD)[1] rating of 12% and 10% for the low-back and neck strains, respectively, and a PPD rating of 21% for the whole body. He noted, however, that the whole-body PPD rating he assigned did not include the concussion that Hudson had suffered, which was within the purview of another doctor.

Hudson was treated by a team led by Dr. Sarah Rockswold for the traumatic brain injury, which included such symptoms as photosensitivity and headaches. Based on Hudson's recovery, she assigned a 0% PPD rating for the traumatic brain injury, noting that a PPD rating for the psychological injuries would need to be assigned later.

Finally, for the psychological injuries, Hudson was treated by Dr. Jane Roskowski, a member of Dr. Rockswold's treatment team. Dr. Roskowski diagnosed Hudson with an adjustment disorder with mixed depression and anxiety, but was unable to assign a PPD rating because their therapeutic relationship ended before she could do so. Hudson also underwent neuropsychological testing conducted by Dr. Jackie Micklewright, who did not assign a PPD rating to Hudson's psychological injuries.

Hudson additionally saw two independent examiners at Trillium's request. The first examiner, Dr. Paul Wicklund, disagreed with Van Hee's evaluation of Hudson's low-back and neck injuries. Dr. Wicklund concluded that the injuries were temporary and had resolved, requiring no further medical treatment and no work restrictions. He accordingly assigned a 0% PPD rating. The second examiner, Dr. Stanley Ferneyhough, attempted to conduct a neuropsychological exam, but discontinued the exam after 40 minutes due to Hudson's allegedly aggressive and uncooperative behavior. Based on the failure to complete the exam, Dr. Ferneyhough did not assign a PPD rating.

In September 2014, Hudson filed a workers' compensation petition seeking benefits for low-back, neck, and concussion injuries arising out of the work accident. *See* Minn. Stat. §§ 176.271, 176.291 (2016) (providing procedures for the filing of workers' compensation petitions). In February 2015, Hudson amended his petition

---

1. Permanent partial disability is compensation "payable for functional loss of use or impairment of function, permanent in nature." Minn. Stat. § 176.021, subd. 3 (2016); *see Allan v. R.D. Offutt Co.*, 869 N.W.2d 31, 34 (Minn. 2015) ("Disability benefits are awarded in accordance with the duration (temporary or permanent) and severity (par-tial or total) of the personal injury."). The Commissioner of Labor and Industry has adopted "rules assigning specific percentages of disability of the whole body for specific permanent partial disabilities." Minn. R. 5223.0010, subp. 1 (2015); *see* Minn. Stat. § 176.101, subd. 2a (2016) (setting compensation amounts for specific PPD percentages).

to include a claim for psychological injuries.

Two months later, Hudson and Trillium began negotiating a settlement of Hudson's claim. Voluntary mediation led to a stipulated settlement, under which Trillium agreed to pay Hudson a lump sum of $125,000 in exchange for settlement of all of Hudson's claims of neck, low-back, brain, psychological, and other injuries for which Hudson claimed PPD, with the sole exception of future reasonable medical expenses for his low-back and neck injuries. The compensation judge reviewed the stipulation, found it "to be in substantial accord with the terms and provisions of the Minnesota Workers' Compensation Law," and approved it. *See* Minn. Stat. § 176.521, subd. 1(a) (2016) (requiring approval of proposed settlements, as in this case, "where one or more of the parties is not represented by an attorney"). The compensation judge awarded benefits to Hudson in accordance with the stipulation.

Following the settlement, Hudson began seeing Dr. Savina Ghelfi, a psychiatrist, who diagnosed Hudson with severe major depression, generalized anxiety disorder, and post-traumatic stress disorder. She assigned a 75% PPD rating to Hudson for the traumatic brain injury. The evaluation also resulted, for the first time, in a medical opinion that Hudson was unable to work due to his injuries.

Based primarily on Dr. Ghelfi's opinion, Hudson filed a petition to vacate the award under Minn. Stat. § 176.461 (2016). The WCCA found, also relying on Dr. Ghelfi's opinion, that Hudson's medical condition had substantially changed and accordingly vacated the award. *Hudson v. Trillium Staffing*, No. WC16-5973, 2016 WL 7443693, at *5-6 (Minn. WCCA Nov. 22,

2016). Trillium has challenged the WCCA's decision by filing a petition for a writ of certiorari.

## ANALYSIS

Minnesota law allows parties to settle workers' compensation claims, subject to certain conditions and requirements. A settlement agreement must be in writing and signed by the parties. Minn. Stat. § 176.521, subd. 1(a). When one of the parties lacks legal counsel, the Commissioner of Labor and Industry; a compensation judge; or in certain limited situations, a district court must approve a settlement agreement before it is enforceable.[2] *Id.* Settlement agreements must comply with Minnesota's Workers' Compensation Act, but otherwise, the statute grants discretion when approving a settlement. *See* Minn. Stat. § 176.521, subd. 2 (2016).

Even after a settlement agreement is approved and benefits are awarded, however, the WCCA may set aside the award on petition by either party. *Id.*, subd. 3. The WCCA may vacate the award and grant a new hearing "for cause," which is limited to four circumstances: (1) "a mutual mistake of fact"; (2) "newly discovered evidence"; (3) "fraud"; or (4) "a substantial change in medical condition since the time of the award that was clearly not anticipated and could not reasonably have been anticipated at the time of the award." Minn. Stat. § 176.461. Hudson petitioned the WCCA to vacate the award on all four grounds, but the WCCA granted the petition on only the fourth ground—a substantial change in Hudson's medical condition—specifically rejecting each of the other three grounds alleged in

**2.** In addition, a full and final settlement of an employee's right to medical compensation, even when both parties have counsel, requires approval by a compensation judge or the Commissioner. Minn. Stat. § 176.521, subd. 2 (2016).

the petition. *Hudson*, 2016 WL 7443693, at *5-6.

On appeal, Trillium challenges the WCCA's decision, arguing that the medical evidence the WCCA relied on was legally insufficient to vacate the award. We review the WCCA's decision to vacate Hudson's award for an abuse of discretion. *Black v. Honeywell, Inc.*, 551 N.W.2d 486, 488 (Minn. 1996). A court "abuses its discretion when its decision is based on an erroneous view of the law or is inconsistent with the facts in the record." *In re Pamela Andreas Stisser Grantor Trust*, 818 N.W.2d 495, 508 (Minn. 2012). Even though the WCCA has "considerable latitude" in making its decision, *Mattson v. Abate*, 279 Minn. 287, 156 N.W.2d 738, 741 (1968), it does not have "unlimited discretion," and we will review the medical record to ensure that the statutory standard has been satisfied. *Stewart v. Rahr Malting Co.*, 435 N.W.2d 538, 539-40 (Minn. 1989).

To set aside an award based on a substantially changed medical condition, a petitioner must prove: (1) a substantial change in medical condition; (2) that the change was clearly not anticipated; and (3) that the change could not reasonably have been anticipated. *Ryan v. Potlatch Corp.*, 882 N.W.2d 220, 224-25 (Minn. 2016). In this case, Hudson's medical evidence failed to satisfy the first requirement.

The WCCA concluded that Hudson satisfied his statutory burden based on Dr. Ghelfi's medical opinion, which assigned a 75% PPD rating to Hudson, far greater than any other physician. *Hudson*, 2016 WL 7443693, at *4, 6. The WCCA reasoned that such a substantial change in PPD rating, and an accompanying inability to work, necessarily satisfied the statutory standard. *Id.* We disagree.

The WCCA failed to sufficiently scrutinize the factual foundation of Dr. Ghelfi's opinion. It is well settled that expert opinions must have an adequate factual foundation to be admissible. *Gianotti v. Indep. Sch. Dist. 152*, 889 N.W.2d 796, 801-02 (Minn. 2017). Adequate foundation for an expert opinion is lacking when the opinion "does not include the facts and/or data upon which the expert relied in forming [the] opinion," *Steffen v. Target Stores*, 517 N.W.2d 579, 581 (Minn. 1994), it does not "explain the basis for [the] opinion," *Welton v. Fireside Foster Inn*, 426 N.W.2d 883, 887 (Minn. 1988), or "when the facts assumed by the expert in rendering an opinion are not supported by the evidence," *Schuette v. City of Hutchinson*, 843 N.W.2d 233, 237 (Minn. 2014).

Here, Dr. Ghelfi's PPD rating lacked foundation in each of these ways. Dr. Ghelfi's opinion was descriptively flawed because it never indicated what facts formed the basis of her opinion that Hudson's traumatic brain injury warranted a PPD rating of 75%. Nor did it explain how she calculated such a high PPD rating.

Moreover, the factual support for Dr. Ghelfi's PPD rating is lacking in the record. Minnesota Rule 5223.0360, subpart 7D(4) (2015), explains that a 75% PPD rating involves constant "moderate to severe emotional disturbances ... and requires sheltering with some supervision of all activities." Nothing in the record indicates that Hudson needs "sheltering" and "some supervision of all activities." To the contrary, the record shows that Hudson exercises considerable independence in his daily activities. Among other things, he rents a room and lives on his own; he cares for his 11-year-old son, who splits his time between Hudson and the child's mother; he manages his medications, finances, and personal affairs; he takes walks by himself in the mornings and occasionally meets

with friends; and he volunteers at his son's school twice a week. This evidence demonstrates that Hudson is capable of taking care of himself without sheltering and supervision of *any* activities, let alone "*all* activities." Minn. R. 5223.0360, subp. 7D(4) (emphasis added). In short, Dr. Ghelfi assigned a PPD rating that is manifestly contrary to the facts in the record.[3]

Dr. Ghelfi's opinion lacked foundation, and therefore did not establish a substantial change in Hudson's medical condition, because it failed to explain the facts on which it relied, did not provide an adequate explanation of its reasoning, and was without support in the record. Accordingly, the WCCA abused its discretion when it granted Hudson's petition to set aside the award of benefits.[4]

## CONCLUSION

For the foregoing reasons, we reverse the decision of the Workers' Compensation Court of Appeals.[5]

Reversed.

**3.** In support of its decision to set aside the award, the WCCA also relied on an opinion that stated that Hudson could no longer work. *Hudson*, 2016 WL 7443693, at *6. To the extent that the inability-to-work opinion was based on Dr. Ghelfi's 75% PPD rating, the opinion lacked foundation because the PPD rating itself lacked foundation. To the extent that the opinion was independent of the PPD rating, it also lacked foundation because, much like the PPD rating, it did not explain the facts or reasoning underlying the conclusion that Hudson could no longer work.

**4.** Although we reverse the WCCA's decision, Minn. Stat. § 176.461 allows those awarded workers' compensation benefits to file a petition to set aside the award whenever the

statutory criteria have been satisfied. Therefore, nothing we say here prevents Hudson from filing another petition in the future if he obtains new or different evidence, with proper foundation, that satisfies the statutory standard.

**5.** Trillium filed a motion to strike Hudson's brief and accompanying addendum in their entirety. We grant the motion to strike the addendum, which includes documents that were not part of the record before the WCCA, but deny the motion to strike Hudson's brief. *See* Minn. R. Civ. App. P. 110.01, 116.04; *Rohmiller v. Hart*, 811 N.W.2d 585, 596 n.10 (Minn. 2012).