THISSEN, Justice.
*392 This case requires us to interpret a 2013 amendment to the Minnesota Workers' Compensation Act, Minn. Stat. §§ 176.001 -.862 (2018), which expanded the Act to allow injured workers to recover workers' compensation benefits for post-traumatic stress disorder (PTSD) that arises out of and in the course of employment. The amendment permits recovery for a "mental impairment," see Minn. Stat. § 176.011, subd. 16, defined as "a diagnosis of post-traumatic stress disorder by a licensed psychiatrist or psychologist," id. , subd. 15(d). " '[P]ost-traumatic stress disorder' means the condition as described in the most recently published edition of the Diagnostic and Statistical Manual of Mental Disorders by the American Psychiatric Association," id. , which in its current version is commonly known as the DSM-5. See Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (5th ed. 2013).
Respondent Chadd Smith, a former deputy sheriff for relator Carver County, seeks workers' compensation benefits for PTSD, which he claims resulted from numerous traumatic incidents that he experienced while working. The County denied responsibility. Two licensed psychologists assessed Smith-one diagnosed Smith with PTSD; the other did not. The compensation judge found the psychologist who did not diagnose Smith with PTSD to be more persuasive, adopted that psychologist's report, and dismissed Smith's claim petition.
The Workers' Compensation Court of Appeals (WCCA) reversed. Smith v. Carver County , No. WC18-6180, 2019 WL 235685, at *1 (Minn. WCCA Jan. 4, 2019). The WCCA determined that the 2013 amendment requires that a compensation judge conduct an independent assessment to verify that the diagnosis of a psychologist *393 or psychiatrist conforms to the PTSD criteria in the DSM-5 before accepting the expert's diagnosis. See id. at *5. We reverse the decision of the WCCA and reinstate the compensation judge's decision.
FACTS
Smith worked as a deputy sheriff with the Carver County Sheriff's Office for nearly 10 years, from July 2006 through June 2016. Before working as a deputy sheriff, Smith had never been diagnosed with, treated for, or had any restrictions related to PTSD. Before beginning his work with the County, Smith underwent a pre-employment examination and was deemed physically and mentally fit to work as a deputy sheriff.
As part of his job as a Carver County deputy sheriff, Smith witnessed numerous situations involving death and injury, including graphic crime scenes, vehicle accidents, homicides, suicides, shootings, assaults, and domestic abuse situations. It is difficult for a person who is not a law enforcement officer or first responder to overstate the traumatic nature of the situations Smith faced. For example, Smith responded to a vehicular accident where a driver was crushed by a 100,000-pound rock crusher and helped to recover the victim's remains for the medical examiner. Smith was called to the scene of a suicide; upon arrival, he realized that the victim-who had died from a self-inflicted gunshot to the head-was his high school classmate. Just months after that case, Smith was tasked with reporting the death of a different high school friend to the friend's next of kin, an experience he understandably described as "extremely distress[ing] and overwhelm[ing]." Smith has responded to a vehicular accident where a part of the victim's body came off in his hands while administering first aid; a vehicular fire where he and other emergency personnel were unable to control the blaze and were unable to save the victim trapped in the vehicle; a house fire where the victim's remains were severely burnt; and an incident of a deceased male whose body had been outside and decaying for several days. During all of this, Smith also experienced stress at home: his wife was diagnosed with cancer and his daughter was diagnosed with a genetic disorder.
Of the events reported by Smith, he deemed two to be the most significant. The first occurred in 2007, soon after he started with Carver County. Smith responded to a vehicular accident in which a young woman had been ejected from the vehicle. Smith reported that, when he approached the woman to administer first aid, he heard her make a sound he referred to as the "death gurgle," which indicated that her injuries were beyond his ability to help. Smith was forced to move on to other victims at the scene. The second event occurred in 2012 when Smith responded to a call involving an infant who had choked to death on a marshmallow. Smith was tasked with taking photos of the child and attending the autopsy. This death was particularly difficult for Smith because his wife was pregnant with their daughter.
During his tenure as a deputy sheriff, Smith experienced physical and mental ailments on a frequent basis. He reported difficulty sleeping, recurrent dreams and night terrors, and intestinal problems. In 2014, one medical professional diagnosed Smith as suffering from PTSD; several others diagnosed Smith with other mental conditions but not PTSD.
Smith resigned as a deputy sheriff in June 2016. Following his resignation, Smith began working as an insurance adjuster.
In July 2016, about a month after his resignation, Smith was evaluated by Dr. Michael Keller, a licensed psychologist. At *394 the time, Smith was still experiencing intestinal and sleep problems. Dr. Keller noted that, during the examination, Smith presented with mild memory impairment and appeared "extremely tense," "quite anxious," and "significantly depressed." Dr. Keller also noted that Smith had difficulty concentrating, was "physically shaking throughout the entire interview process," "was frequently tearful and emotionally distressed," and was "hyper-vigilant." To evaluate Smith's mental condition, Dr. Keller reviewed Smith's medical history and administered several diagnostic tests (the PTSD Checklist (PCL-5), the Clinician Administered PTSD Scale (CAPS-5), the Minnesota Multiphasic Personality Inventory (MMPI-2), and the Millon Clinical Multiaxial Inventory (MCMI-IV)). Dr. Keller diagnosed Smith with PTSD, major depressive disorder, and anxiety disorder under the DSM-5.
On August 15, 2016, Smith notified the Carver County Sheriff's Department of Dr. Keller's PTSD diagnosis and asked the County to file a First Report of Injury with the Department of Labor and Industry. The County denied responsibility. In December 2016, Smith filed a workers' compensation claim petition with the Commissioner of the Department of Labor and Industry seeking workers' compensation benefits for his PTSD.
On May 11, 2017, at the request of Carver County, Dr. Paul Arbisi-also a licensed psychologist-performed an independent psychological evaluation of Smith. He noted that Smith reported hypervigilance and withdrawal symptoms and that he felt less engaged and less outgoing. He also noted that Smith was experiencing mood swings, irritability, insomnia, a distinct lack of energy, and physical discomfort. To evaluate Smith's mental condition, Dr. Arbisi administered the CAPS-5 and MMPI-2 tests. Following these tests, Dr. Arbisi diagnosed Smith with somatic symptom disorder and adjustment disorder with mixed anxiety and depressed mood. Dr. Arbisi concluded that Smith did not have PTSD under the criteria set forth in the DSM-5.
The workers' compensation judge held a hearing on Smith's claim petition. Smith and an investigative lieutenant for Carver County were the only live witnesses. All medical evidence was offered in written form, which included records from several medical providers, the reports of Drs. Keller and Arbisi, and the transcripts of the depositions of Drs. Keller and Arbisi. Following the hearing, the compensation judge dismissed Smith's petition. The judge adopted Dr. Arbisi's opinion and diagnosis, tersely finding that Dr. Arbisi's medical opinion was persuasive and that Dr. Keller's medical opinion was unpersuasive. In his memorandum, the compensation judge stated that he "carefully considered the entire record in this matter, including the testimony at trial, documentary evidence submitted, and also the arguments ably presented by counsel for each of the parties." The judge "concluded that the evidence supports his Findings as to the issues before him in the present proceeding; no further comment or explanation is necessary."[1] Because Smith had failed to meet his burden to prove that he *395 was suffering from PTSD arising out of and in the scope of employment, the compensation judge denied Smith's request for benefits and dismissed his petition.
The WCCA reversed the compensation judge's decision in part, vacated in part, and remanded for further consideration. Smith , 2019 WL 235685, at *1. The WCCA held that the language of Minn. Stat. § 176.011, subd. 15(d), is "unique" because it incorporated the definition of PTSD set forth in the latest version of the DSM. 2019 WL 235685 at *5. Because of that "unique" language, the court concluded that "a determination of whether a claim for PTSD is compensable must go beyond the weighing and choosing between competing expert medical opinions." Id. The WCCA held that compensation judges "must apply the statute to determine whether the employee met his or her burden of proof to establish a compensable claim of PTSD. In doing so, judges may rely on expert medical opinion, so long as the opinion is consistent with the requirements contained in the statute ," i.e., the DSM-5 PTSD criteria. Id. (emphasis added).
Relying on its interpretation of the statute, the WCCA held that the compensation judge's decision to adopt Dr. Arbisi's opinion was improper because Dr. Arbisi's diagnosis did not explicitly conform to the PTSD criteria in the DSM-5. See id. at *5-6. The court reversed the compensation judge's finding that Dr. Arbisi's opinion was persuasive, vacated the finding that Dr. Keller's opinion was unpersuasive, and remanded for a determination of whether Dr. Keller's opinion complied with the DSM-5 criteria. Id. at *6. Carver County filed a timely petition for review.
ANALYSIS
We review de novo the interpretation of statutory provisions in the Workers' Compensation Act. Gilbertson v. Williams Dingmann, LLC , 894 N.W.2d 148, 151 (Minn. 2017). The statutory interpretation question before us turns on the Legislature's intent when it enacted Minn. Stat. § 176.011, subds. 15(a), (d), 16. See Minn. Stat. § 645.16 (2018). The plain language of the statute is our best guide to the Legislature's intent. See State v. Riggs , 865 N.W.2d 679, 682 (Minn. 2015). When the statutory language is clear, the Legislature's intent is clear and we follow it.
I.
The Minnesota Workers' Compensation Act states that "[e]very employer is liable ... to pay compensation in every case of personal injury or death of an employee arising out of and in the course of employment without regard to the question of negligence. The burden of proof of these facts is upon the employee." Minn. Stat. § 176.021, subd. 1.
Before 2013, employees could receive workers' compensation benefits for work-related mental stimulus or injuries only when (1) a mental stimulus produced physical injury; or (2) a physical stimulus produced mental injury. See Schuette v. City of Hutchinson , 843 N.W.2d 233, 237 & n.2 (Minn. 2014). Claims where "a mental stimulus result[ed] in [only] mental injury" were not covered. Id. at 237. Moreover, "the presence of physical symptoms d[id] not convert a claim based on mental injury caused by mental stimulus into a compensable claim." Id. In short, before 2013, a worker could not recover for PTSD under the Workers' Compensation Act.
In 2013, the Legislature amended the Minnesota Workers' Compensation Act by redefining "occupational disease" and "personal injury" to include "mental impairment." Act of May 16, 2013, ch. 70, art. 2, §§ 1-2, 2013 Minn. Laws 362, 367-68 (codified at *396 Minn. Stat. § 176.011, subds. 15(a), (d), 16 ). The relevant portions of the amended Act state:
Subd. 15. Occupational disease. (a) "Occupational disease" means a mental impairment as defined in paragraph (d) or physical disease arising out of and in the course of employment ....
(d) For the purposes of this chapter, "mental impairment" means a diagnosis of post-traumatic stress disorder by a licensed psychiatrist or psychologist. For the purposes of this chapter, "post-traumatic stress disorder" means the condition as described in the most recently published edition of the Diagnostic and Statistical Manual of Mental Disorders by the American Psychiatric Association....
Subd. 16. Personal injury. "Personal injury" means any mental impairment as defined in subdivision 15, paragraph (d) ....
Minn. Stat. § 176.011, subds. 15(a), (d), 16.
The language is plain and straightforward. For an employee to recover workers' compensation benefits for PTSD arising out of and in the course of employment, the employee must prove that a psychiatrist or psychologist has diagnosed him or her with PTSD and that the professional based the employee's diagnosis on the latest version of the DSM.[2] Neither Smith nor the County suggests that the statutory language prevents an employer from submitting a diagnosis from a psychiatrist or psychologist based on the latest version of the DSM that contradicts the diagnosis of the employee's medical professional. In that circumstance (as in every other workers' compensation case where the parties submit competing medical diagnoses), the job of the compensation judge is to determine whether the expert diagnoses have adequate foundation and, if both have adequate foundation, decide which of the professional diagnoses is more credible and persuasive. See Gianotti v. Indep. Sch. Dist. 152 , 889 N.W.2d 796, 803 (Minn. 2017) ("In weighing medical evidence, a compensation judge has the discretion as the trier of fact to choose between competing and conflicting medical experts' reports and opinions."). And as a general rule, the WCCA must affirm a compensation judge's choice between two expert opinions "unless the facts assumed by the expert in rendering his or her opinion are not supported by the evidence." Pelowski v. K-Mart Corp. , 627 N.W.2d 89, 93 (Minn. 2001) (citing Nord v. City of Cook , 360 N.W.2d 337, 342-43 (Minn. 1985) ).
In reaching a different conclusion, the WCCA found (and Smith urges us to *397 agree) that the straightforward statutory language providing that PTSD is covered by the Workers' Compensation Act somehow worked a revolution in the role of the compensation judge for this specific class of injuries. The WCCA's opinion would require the compensation judge to go far beyond determining whether the medical professional had an adequate foundation for diagnosing a worker with (or without) PTSD under the DSM-5. Instead, under the WCCA's approach, the compensation judge must lay each expert's report on the desk next to the DSM-5 and assess whether the medical professional's opinion conformed with the precise wording of the DSM-5 as the compensation judge interprets those words. As Smith acknowledged at oral argument, the WCCA opinion tells compensation judges to independently read and apply the DSM-5 in accordance with the canons of construction as if it were an administrative rule or regulation. Nothing in the language of Minn. Stat. § 176.011, subds. 15(a), (d), 16, even remotely suggests that such an exercise is required.
Indeed, the Legislature's use of the phrase "diagnosis ... by a licensed psychiatrist or psychologist" in subdivision 15(d) demonstrates that the professional judgment and discretion of a trained professional in evaluating whether an employee suffers from PTSD is the essential focus. See Minn. Stat. § 176.011, subd. 15(d) ; see also Diagnosis , Black's Law Dictionary (10th ed. 2014) (defining "diagnosis" as "[t]he determination of a medical condition ... by physical examination or by study of its symptoms"). Because of the complexity of diagnosing a medical condition, such assessments are "usually a matter of professional judgment" about which reasonable medical experts may disagree. Todd v. Eitel Hosp. , 306 Minn. 254, 237 N.W.2d 357, 362 (1975). Accordingly, when medical diagnosis is required, deference to a professional's judgment is sensible. "[P]rofessional judgments [by medical professionals] are entitled to a presumption of validity" because there is " 'no reason to think judges or juries are better qualified than appropriate professionals in making ... decisions [in the treatment context.]' " Jarvis v. Levine , 418 N.W.2d 139, 147 (Minn. 1988) (quoting Youngberg v. Romeo , 457 U.S. 307, 323, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982) ). But that is precisely what the WCCA opinion does: It substitutes a compensation judge's legalistic analysis of the DSM-5 for the professional judgment of psychiatrists and psychologists.
The WCCA's decision also ignores guidance in the DSM-5 about how it is to be used. The DSM-5 notes that its "primary purpose ... is to assist trained physicians in the diagnosis of their patients' mental disorders ...." Am. Psychiatric Ass'n, DSM-5, supra , at 19 (emphasis added). To that end, it warns that "[t]he symptoms contained in the respective diagnostic criteria sets do not constitute comprehensive definitions of underlying disorders , which encompass cognitive, emotional, behavioral, and physiological processes that are far more complex than can be described in these brief summaries." Id. (emphasis added). And almost as if the editors of the DSM were anticipating this case, the DSM warns: "[T]he definition of mental disorder[s] included in [the DSM] [were] developed to meet the needs of clinicians, public health professionals, and research investigators rather than all of the technical needs of the courts and legal professionals. " Id. at 25 (emphasis added). Consequently, the "[u]se of [the DSM] to assess for the presence of a mental disorder by nonclinical, nonmedical, or otherwise insufficiently trained individuals is not advised." Id. Put another way, the DSM is *398 a guideline for medical and health professionals, not a checklist for judges.
We also disagree with Smith's contention that Dr. Arbisi's use of a battery of primary assessment instruments like the CAPS-5 and MMPI-2 tests to apply the DSM-5 criteria resulted in an impermissible departure from the criteria.[3] In fact, both Dr. Keller and Dr. Arbisi used the CAPS-5 and MMPI-2 tools in their diagnoses of Smith. The use of tests specifically designed to assist professionals in applying the DSM criteria is perfectly appropriate and expected.[4]
We therefore conclude that Minn. Stat. § 176.011, subd. 15(d), does nothing more than require that a diagnosis of PTSD in a workers' compensation case be done by a licensed psychiatrist or psychologist based on the latest version of the DSM.
II.
We now turn to the compensation judge's decision that Dr. Arbisi's diagnosis was more persuasive than Dr. Keller's diagnosis. When reviewing the factual findings of a compensation judge, the WCCA may not "disregard the compensation judge's findings, but must affirm the findings unless they are 'clearly erroneous and unsupported by substantial evidence in view of the entire record as submitted.' " Pelowski , 627 N.W.2d at 92 (quoting Minn. Stat. § 176.421, subd. 1 ). "Substantial evidence is evidence that a reasonable mind might accept as adequate." Id. Further, where a dispute centers on the compensation judge's choice between two conflicting expert opinions, the judge's choice between experts must be "upheld unless the facts assumed by the expert in rendering his or her opinion are not supported by the evidence." Id. at 93 (citing Nord , 360 N.W.2d at 342-43 ); see also Gianotti , 889 N.W.2d at 803. A compensation judge may rely on an expert opinion if it has "an adequate factual foundation." Hudson v. Trillium Staffing , 896 N.W.2d 536, 540 (Minn. 2017) (citation omitted). Adequate foundation is lacking where the opinion (1) "does not include the facts and/or data upon which the expert relied in forming the opinion"; (2) "does not explain the basis for the opinion"; or (3) "when the facts assumed by the expert in rendering an opinion are not supported by the evidence." Id. (citations omitted). The expert opinion "need only be based on 'enough facts to form a reasonable opinion that is not based on speculation or conjecture.' "
*399 Mattick v. Hy-Vee Foods Stores , 898 N.W.2d 616, 621 (Minn. 2017) (quoting Gianotti , 889 N.W.2d at 802 ).
We have carefully reviewed the record, including the depositions and medical opinions of Drs. Keller and Arbisi. Dr. Arbisi's opinion was based on enough facts, forms a reasonable opinion, and thus is not based on speculation or conjecture. See id. Dr. Arbisi reviewed Smith's medical history, conducted an in-person evaluation and interview, and then produced a detailed report summarizing his findings, evaluation, and diagnosis. Dr. Arbisi was also deposed and rigorously cross-examined by counsel. And critically, Dr. Arbisi based his diagnosis on the DSM-5 criteria for PTSD. Accordingly, we conclude that Dr. Arbisi's opinion included the facts and data upon which he relied in forming his opinion, explained the basis for his opinion, and did not assume facts that are not supported by the evidence. See Hudson , 896 N.W.2d at 540. Because Dr. Arbisi's opinion had adequate factual foundation, the WCCA erred by overriding the compensation judge's choice.
CONCLUSION
For the foregoing reasons, we reverse the decision of the Workers' Compensation Court of Appeals and reinstate the decision of the compensation judge.
Reversed.
Attachment *400 Assessment and Diagnosis of Posttraumatic Stress Disorder *401 *402 *403 Assessment and Diagnosis of Posttraumatic Stress Disorder: Page 2 of 4 *404 *405 Assessment and Diagnosis of Posttraumatic Stress Disorder: Page 3 of 4 *406 *407 Assessment and Diagnosis of Posttraumatic Stress Disorder: Page 4 of 4 *408 *409 --------

Although the compensation judge broadly adopted Dr. Arbisi's opinions, he gave no specific reasons in his findings or memorandum for the conclusion that Dr. Arbisi's opinions were persuasive. While we can (and certainly did) review the two doctors' reports and depositions and other record evidence, a fact-finding court's detailed explanation of its reasoning is always helpful to reviewing courts and, more importantly, to the parties. On appeal, Smith does not assert that the compensation judge's findings were insufficiently detailed.

The WCCA and Smith placed much weight on the second sentence of subdivision 15(d), which requires the diagnosis to be "the condition ... described in the most recently published edition of the Diagnostic and Statistical Manual of Mental Disorders by the American Psychiatric Association." Minn. Stat. § 176.011, subd. 15(d). This is unsurprising language. There are competing and evolving versions of the diagnostic criteria for PTSD. For example, the International Classification of Diseases sets forth a different set of diagnostic criteria for health conditions than the DSM-5. See generally World Health Organization, Classifications , World Health Org. (last visited July 9, 2019), https://www.who.int/classifications/icd/en/. Perhaps more importantly, the definition of PTSD may change as new versions of the DSM itself are promulgated. The diagnostic criteria for PTSD in the DSM-5 differ from the criteria set out in the DSM-4. Compare Am. Psychiatric Ass'n, DSM-5, supra , at 271-74, with Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 463-68 (4th ed. text revision 2000). The Legislature wisely chose statutory language that accounted for the possible evolution of the diagnostic criteria for PTSD without requiring the passage of amendatory language each time a new version of the DSM is published.

Several primary assessment instruments have been developed to apply the DSM criteria to specific patients. These include the CAPS-5, PCL-5, and MMPI-2 tests noted above. Other examples include the Structured Clinical Interview (SCID), PTSD Symptom Scale-Interview (PSS-I), Structured Interview for PTSD (SIP), Posttraumatic Stress Diagnostic Scale (PDS), Davidson Trauma Scale (DTS), Impact of Event Scale (IES), Mississippi Scale for Combat-Related PTSD (Mississippi Scale), and Personality Assessment Inventory (PAI). See Edna B. Foa & Elna Yadin, Assessment and Diagnosis of Posttraumatic Stress Disorder , Psychiatric Times, July 1, 2011, at 1-4, https://www.psychiatrictimes.com/ptsd/assessment-and-diagnosis-posttraumatic-stress-disorder [opinion attachment]. Notably, subdivision 15(d) does not instruct a compensation judge on which test should be used by a medical expert, much less how to apply it. In fact, the DSM-5 itself is silent as to how a psychologist or psychiatrist should evaluate a patient's symptoms. That decision rests with trained psychiatrists and psychologists, not compensation judges.

Of course, nothing in our decision prevents a compensation judge from performing the traditional task of reviewing or analyzing an expert's report in order to evaluate the expert's credibility, factual foundation, or other aspects relevant to a compensation judge's assessment of an expert's report and conclusions.