STATE OF MINNESOTA

IN SUPREME COURT

A23-1207

Workers' Compensation Court of Appeals

McKeig, J.

Janine Tea,

Respondent,

vs.

Filed: April 17, 2024
Office of Appellate Courts

Ramsey County, Self-Insured,

Relator.

—————————————

David B. Kempston, Mottaz & Sisk Injury Law, Coon Rapids, Minnesota, for respondent.

Andrew M. Grimsrud, Aafedt, Forde, Gray, Monson & Hager, P.A., Minneapolis, Minnesota, for relator.

—————————————

S Y L L A B U S

1. The Workers' Compensation Court of Appeals' affirmance of the compensation judge's finding that the employee has compensable post-traumatic stress disorder is not manifestly contrary to the evidence because the compensation judge based his conclusion on the employee's credibility and the persuasiveness of an expert diagnosis of post-traumatic stress disorder.

2. In accord with our decision in *Smith v. Carver County*, 931 N.W.2d 390, 396–97 (Minn. 2019), compensation judges may review the Diagnostic and Statistical

Manual of Mental Disorders criteria when considering the persuasiveness of expert reports, but judges may not use those criteria to make their own diagnosis of a claimant's condition.

Affirmed.

O P I N I O N

McKEIG, Justice.

We are presented here with a disputed post-traumatic stress disorder ("PTSD") claim. Respondent Janine Tea was employed as a social worker for relator Ramsey County and reported a PTSD injury during her employment related to her exposure to details of a murder committed by one of her clients. The County initially provided workers' compensation benefits to Tea but discontinued those benefits after a licensed psychiatrist concluded she did not have PTSD. Tea filed an objection to the discontinuance of her benefits and underwent an independent psychological evaluation in which she was diagnosed with PTSD. The compensation judge determined that Tea has compensable PTSD. The Workers' Compensation Court of Appeals ("WCCA") affirmed.

Ramsey County asks us to reverse, asserting that Tea did not meet the diagnostic criteria for PTSD listed in the Diagnostic and Statistical Manual of Mental Disorders ("DSM"). Because the WCCA's affirmance of the compensation judge's finding that Tea has compensable PTSD is not manifestly contrary to the evidence, we affirm.

**FACTS**

Tea is a licensed social worker whom Ramsey County employed as a case manager in the Adult Mental Health Case Management unit. In February 2020, one of Tea's clients (the "Client") murdered his girlfriend in an act of horrific brutality. Tea learned of the

2

murder and the grisly details over the following week through a series of phone calls and meetings related to the Client and the crime.

At that point, Tea had worked for Ramsey County for approximately 6 years, and her clients were people with a history of mental illness who had trouble functioning in society. A different team of Ramsey County social workers—the forensics team—worked with people who were both mentally ill and dangerous. Tea was neither on the forensics team nor had she received the specialized training provided to the forensics team. Nevertheless, in the summer of 2019, the Client was assigned to her caseload from the forensics unit.

The day following the murder, Tea received a phone call from a colleague informing her of the details of the crime. Tea was driving at the time, and upon learning the "overwhelmingly traumatic information," she began to experience tunnel vision that forced her to pull her car off the highway. Throughout that day, Tea remained in her car and on the phone. Although her condition did not allow her to travel on the highway to her office, she remained cognizant of the responsibilities that fell to her as the Client's case manager. From her car, she made and received calls related to the Client, cancelled or rescheduled appointments with her other clients for that day, and contacted the Saint Paul Police Department to ask that they inform the victim's mother of the murder.

For the next week, Tea was involved in calls and meetings regarding the murder "every single day, almost all day long," and had to put all her other client work aside. During that week, Tea saw details about the murder on the news and began obsessively researching the murder outside of her working hours. Tea felt a "legal responsibility" for

3

the murder because the Client "was on a civil commitment order, and [Tea's] name was listed on there as his adult mental health case manager." Because of this, she worried about any publicity surrounding the murder that could affect her or her family. Tea became irritable, had trouble sleeping, and began having nightmares related to the murder.

Five days after she learned of the murder, Tea reported she had suffered a work-related injury to her mental health. She listed the date of injury as the day of the murder and the type of injury as secondary trauma related to a violent act committed by a client. Ramsey County initially accepted liability for Tea's claim and paid a variety of benefits.

Three days after Tea made the report, Dr. Robert Finn, a Doctor of Nursing Practice, conducted a psychiatric evaluation of Tea. Dr. Finn strongly suggested that Tea focus on psychotherapy so her condition did not worsen into PTSD, and he also recommended she take a month off work. Dr. Finn acknowledged Tea's previous attention-deficit/hyperactivity disorder ("ADHD") diagnosis, and a month later, diagnosed her with acute stress disorder. He met with Tea monthly, and for the next 3 months, he consistently found that Tea was unable to successfully manage her trauma and recommended she remain off work while they tried different medications and additional psychotherapy. Around 4 months after the murder, Tea reported improved symptoms to Dr. Finn and a desire to return to work, so she was put on a graduated return-to-work schedule that, over a period of 6 weeks, would return Tea to full-time work with Ramsey County. In a subsequent visit, Dr. Finn noted that Tea was doing well in her return to work.

Tea's mental health began to deteriorate again, however, around 4 months after returning to work full time. She reported to Dr. Finn countertransference[1] concerns with the psychotherapist she had been seeing since the murder, so Dr. Finn referred her to a new psychotherapist: Ms. Samantha Colai, a licensed marriage and family therapist. Around this time, Tea began missing 2 to 3 days of work per week and began struggling with her duties at work. Dr. Finn noted that Tea's trauma, depression, and anxiety symptoms were affecting her executive functioning capabilities, but explained that it was hard to differentiate those symptoms from those of uncontrolled ADHD.

In February 2021, nearly a year after the Client murdered his girlfriend, Dr. Finn diagnosed Tea with PTSD based on criteria found in the DSM and recommended that she remain off work until June of that year. In May 2021, Dr. Finn extended his recommendation through August. In June 2021, Ramsey County requested that Tea undergo an interview and psychological testing with Dr. John Hung, a licensed psychologist, to determine her ability to return to work as a social worker. After more than 12 hours of testing over a span of 3 days, Dr. Hung determined that Tea had PTSD and was psychologically unable to perform her job as a social worker. Dr. Hung opined in his report that the changes in Tea's ability to function "strongly implicate" the murder as a substantial contributing cause, and further, that it was "not simply one incident of being informed of

---

[1] Transference is a phenomenon in psychotherapy " 'whereby the patient displaces on to the therapist feelings, attitudes, and attributes which properly belong to a significant attachment figure of the past, usually a parent, and responds to the therapist accordingly.' " *St. Paul Fire & Marine Ins. Co. v. Love,* 459 N.W.2d 698, 700 (Minn. 1990) (quoting S. Waldron-Skinner, *A Dictionary of Psychotherapy* 364 (1986)). Countertransference occurs "when the therapist transfers his own problems to the patient." *Id.*

the murder," but also "her heavy and repeated exposure to information about the murder" over the following days. Dr. Hung's diagnosis of Tea's PTSD did not mention the DSM criteria.

Ramsey County and its workers' compensation insurer requested an independent medical evaluation report of Tea's ongoing complaints. Consequently, Dr. Thomas Gratzer, a licensed psychiatrist, prepared a report in January 2022 based on his recent interview with Tea and on a clinical psychological assessment given to her by Dr. Marvin Logel. In his report, Dr. Gratzer concluded that Tea's complaints were consistent with her history of anxiety, depression, and ADHD, and likely the result of "burn out" rather than the work incident involving the murder by the Client. When making his determination, Dr. Gratzer expressly concluded that Tea did not meet the DSM criteria for PTSD because she was not exposed to any actual or threatened death, serious injury, or sexual violence. Dr. Gratzer's report also opined that Tea was overreporting trauma resulting from the murder to justify difficulties that she was having at work. He concluded that Tea did not require a work restriction. At this point, Ramsey County discontinued Tea's benefits, to which Tea responded by filing a claim petition and objection to discontinuance of the benefits.

After Dr. Gratzer submitted his report, Dr. Finn and Ms. Colai both wrote letters disagreeing with the conclusions in the report.[2] In May 2022, Tea underwent an independent psychological examination at her own request from Dr. Michael Keller, a

---

[2] Neither Dr. Finn nor Ms. Colai were licensed as either a psychologist or a psychiatrist, so their medical diagnoses did not satisfy the requirement for a compensable PTSD claim laid out by statute. *See* Minn. Stat. § 176.011, subd. 15(d) (2022).

licensed psychologist. Dr. Keller diagnosed Tea with PTSD, finding that her symptoms met the DSM criteria because they stemmed from the work-related exposure to details of the murder. A few months later, Tea began working at a Ramsey County library with restrictions and a reduced wage compared to her position as a social worker.

At the hearing before the compensation judge, the reports of Dr. Hung, Dr. Gratzer, and Dr. Keller were all admitted into evidence without objection, and the parties stipulated that Tea's medical treatment was necessary. Tea testified and was expressly found to be credible by the compensation judge. The judge also found credible the opinions of Dr. Keller, Dr. Hung, and Tea's treating providers. Neither party contests that both Dr. Keller's and Dr. Gratzer's diagnoses had adequate foundation. Ultimately, the compensation judge found Dr. Keller, Dr. Hung, and Tea's treating providers more credible than Dr. Gratzer and awarded benefits accordingly. The judge found that Tea "sustained a work-related psychological injury beginning [the day after the murder], the nature and extent of which is PTSD and Major Depressive Disorder."

Ramsey County appealed to the WCCA. The WCCA affirmed the compensation judge's finding that Tea "sustained work-related PTSD." *Tea v. Ramsey County*, No. WC22-6493, 2023 WL 5094369, at *4 (Minn. WCCA July 28, 2023).[3] Ramsey County appealed.

---

[3] The WCCA vacated the compensation judge's finding that Tea sustained a work-related injury in the nature of major depressive disorder. *Tea v. Ramsey County*, No. WC22-6493, 2023 WL 5094369, at *4 (Minn. WCCA July 28, 2023). Major depression injuries are not compensable by themselves, but we have not considered whether major depression injuries consequential to a PTSD injury are compensable. *See Chrz v. Mower*

## ANALYSIS

The question here is not whether Tea definitively has PTSD, but rather whether the WCCA's affirmance of the compensation judge's findings that Tea sustained work-related PTSD was manifestly contrary to the evidence. *See Lagasse v. Horton*, 982 N.W.2d 189, 202 (Minn. 2022). PTSD is a compensable "occupational disease" under Minnesota's workers' compensation statutes. *See* Minn. Stat. §§ 176.011, subd. 15(a), (d) (2022) (defining "occupational disease" and "mental impairment"), 176.021, subd. 1 (2022) (addressing an employer's liability for compensation). Section 176.011 identifies specific requirements necessary for PTSD to be a compensable mental impairment:

> For the purposes of this chapter, "mental impairment" means a diagnosis of post-traumatic stress disorder by a licensed psychiatrist or psychologist. For the purposes of this chapter, "post-traumatic stress disorder" means the condition as described in the most recently published edition of the Diagnostic and Statistical Manual of Mental Disorders by the American Psychiatric Association.

Minn. Stat. § 176.011, subd. 15(d). In this case, Ramsey County asks us to reverse based on its assertion that Tea did not meet certain diagnostic criteria of the DSM's description for PTSD. Ramsey County challenges the finding of compensable PTSD by arguing (1) that the compensation judge's finding is manifestly contrary to the evidence, and (2) that the WCCA's refusal to re-evaluate the compensation judge's factual findings was

*County*, 986 N.W.2d 481, 486 n.2 (Minn. 2023). Here, the WCCA vacated the compensation judge's finding that Tea sustained a work-related major depression injury because that claim was "not pled as a consequential injury." *Tea*, 2023 WL 5094369, at *4. This issue was not appealed to us, so we do not address it further.

an error of law because it contravened Minn. Stat. § 176.011, subd. 15(d). We evaluate each argument in turn.

I.

First, we determine whether the WCCA's affirmance of the compensation judge's factual finding that Tea has compensable PTSD is manifestly contrary to the evidence. Our review here is limited. If the WCCA has affirmed the factual findings of the compensation judge, we view the facts in the light most favorable to the findings and must uphold those findings unless they are "manifestly contrary to the evidence." *Schmidt v. Wal-Mart Stores, Inc.*, 988 N.W.2d 124, 129 (Minn. 2023). To be manifestly contrary to the evidence, the evidence must "clearly require[] reasonable minds to adopt a contrary conclusion." *Lagasse*, 982 N.W.2d at 202; *see also Hengemuhle v. Long Prairie Jaycees*, 358 N.W.2d 54, 61 (Minn. 1984).

A compensation judge can award compensation for PTSD only if the employee "prove[s] that (1) a psychiatrist or psychologist has diagnosed the employee with PTSD, and (2) the professional based the employee's diagnosis on the latest version of the DSM." *Chrz v. Mower County*, 986 N.W.2d 481, 485 (Minn. 2023) (citing *Smith v. Carver County*, 931 N.W.2d, 390, 396 (Minn. 2019)).[4] When medical professionals provide competing

_____

[4]     The WCCA noted that the experts in this case used the DSM-5 rather than the most recent version of the DSM, the DSM-5-TR. *Tea*, 2023 WL 5094369, at *3. Even so, the WCCA deemed any question of whether the wrong version of the DSM had been used to be forfeited by the parties. *Id.* The PTSD criteria in the DSM-5 and the DSM-5-TR are identical. *Compare* Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 271–72 (5th ed. 2013) (DSM-5), *with* Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders, Text Revision* 301–03 (5th ed. 2022) (DSM-5-TR). Additionally, we note that Dr. Gratzer's report predated the release of the DSM-5-TR. For

9

diagnoses, the compensation judge must determine "whether the expert diagnoses have adequate foundation and, if both have adequate foundation, decide which of the professional diagnoses is more credible and persuasive." *Juntunen v. Carlton County*, 982 N.W.2d 729, 743 n.10 (Minn. 2022) (quoting *Smith*, 931 N.W.2d at 396) (internal quotation marks omitted). In this case, the parties do not contest the adequacy of the foundation of either the report of Dr. Keller, who diagnosed PTSD, or the report of Dr. Gratzer, who did not diagnose PTSD. Ramsey County did not object to Dr. Keller's report and concedes that Dr. Keller's opinion has foundation.

The compensation judge determined that Dr. Keller's report was more persuasive than Dr. Gratzer's report. In particular, the judge found instructive that Dr. Gratzer relied heavily upon the clinical testing done by Dr. Logel, but that Dr. Gratzer only "attached conclusions to the results that conformed to his opinions while failing to address" other possibilities discussed by Dr. Logel. For example, Dr. Logel indicated in his psychological test report that Tea's responses to the clinical testing could either be associated with the overreporting of symptoms *or* with "the credible reporting of an individual with substantial medical problems" while also noting that the described diagnostic protocol was suggestive of PTSD. Dr. Gratzer did not refer to that latter possibility. Further, Dr. Gratzer concluded that Tea could not have PTSD because she did not directly experience a traumatic event. But the compensation judge also noted that Dr. Gratzer failed to address PTSD Criterion

these reasons, the issue of whether the correct version of the DSM was used is not before us.

10

A(4)[5]—the very criterion that was Dr. Keller's basis for diagnosing Tea with PTSD. The compensation judge contrasted Dr. Gratzer's opinion with the contrary opinions of Drs. Keller and Hung[6] and ultimately found the doctors who had diagnosed Tea with PTSD to be more credible.

A different compensation judge could have certainly reached a different conclusion, and our ruling is not based upon the premise that Tea unequivocally has PTSD. Yet nothing in the evidence presented "clearly requires reasonable minds to adopt a contrary conclusion." *Lagasse*, 982 N.W.2d at 202. The compensation judge was presented with competing expert reports, those reports had adequate foundation, and the judge made a choice based on all the evidence before him. Because this choice does not clearly require a contrary conclusion, the WCCA's affirmance of the compensation judge's finding is not manifestly contrary to the evidence.

---

[5]    The most recent version of the DSM describes Criterion A(4) for PTSD as "[e]xposure to actual or threatened death, serious injury, or sexual violence in one (or more) of the following ways: . . . (4) Experiencing repeated or extreme exposure to aversive details of the traumatic event(s) (e.g., first responders collecting human remains; police officers repeatedly exposed to details of child abuse)." Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders, Text Revision* 301 (5th ed. 2022).

[6]    Dr. Hung's diagnosis of Tea's PTSD did not mention the DSM criteria so this diagnosis did not satisfy the statutory requirement for a compensable PTSD claim. *See* Minn. Stat. § 176.011, subd. 15(d); *Chrz*, 986 N.W.2d at 483 n.1. Dr. Keller's diagnosis of PTSD *did* use the DSM, so the statutory requirement was met for a finding of PTSD. Ultimately, the compensation judge did not consider Dr. Hung's opinion as to whether Tea had PTSD, but rather to assess the credibility of Dr. Gratzer's opinion.

11

Next, we must determine whether the WCCA made an error of law by refusing to itself use the DSM to re-evaluate the compensation judge's factual finding that Tea has PTSD. Legal questions, including the interpretation of the Workers' Compensation Act, are reviewed de novo. *Chrz*, 986 N.W.2d at 485.

Ramsey County argues that the WCCA's refusal to consider its arguments that the facts here do not conform to the DSM description of PTSD was an error of law. Because Minn. Stat. § 176.011, subd. 15(d), requires a PTSD diagnosis to be based on the DSM description, Ramsey County argues the WCCA was required to analyze whether the facts here show that Tea met the DSM diagnostic criteria. But this argument misreads both the workers' compensation law and our case law.

In *Smith v. Carver County*, a PTSD case, we reversed a WCCA decision that would have required "compensation judges to independently read and apply the DSM-5 in accordance with the canons of construction as if it were an administrative rule or regulation." 931 N.W.2d at 397. We found this instruction wholly unsupported by the workers' compensation statute because it "would require the compensation judge to go far beyond determining whether the medical professional had an adequate foundation for diagnosing a worker with (or without) PTSD under the DSM-5." *Id.* We also noted that "when medical diagnosis is required, deference to a professional's judgment is sensible." *Id.*

Ramsey County argues that this case is distinguishable from *Smith* based on "(1) the underlying facts; (2) the compensation judge's handling of the case; and (3) the WCCA's

handling of the case." Regarding the underlying facts, Ramsey County argues that *Smith* is distinguishable because, unlike here, the material facts were disputed. But this is not a reason the rule in *Smith* should not apply in this case. Next, Ramsey County argues that *Smith* is distinguishable because there, the compensation judge and WCCA handled the case differently than their counterparts did in this case. In *Smith*, the compensation judge did not thoroughly explain his decision in a memorandum, so there was no way to determine if his decision was based on an incorrect application of the law. *Id.* at 394, n.1. In this case, the compensation judge provided a memorandum detailing his reasoning. The fact that the compensation judge provided a memorandum does nothing to affect the applicability of the *Smith* rule. Regarding the WCCA's handling of this case, the *Smith* decision itself is the precise reason for any difference. In *Smith*, we held that the WCCA's review is limited, so undoubtedly the WCCA will apply that rule in subsequent cases, as the WCCA did here. Thus, for purposes of the issue before us, this case is entirely analogous to *Smith*.

Alternatively, Ramsey County asks that we overturn *Smith* and require compensation judges and the WCCA to make their own DSM diagnoses of those claiming a work-related PTSD injury. To justify this request, Ramsey County insists an affirmance would allow employees with *any* mental impairment to use a PTSD diagnosis to collect benefits, regardless of whether the underlying facts meet the DSM criteria. Not only is this argument seemingly one of public policy, which the Legislature is better positioned to sort out, *see Fletcher Props., Inc. v. City of Minneapolis*, 947 N.W.2d 1, 11 (Minn. 2020), it is also unfounded. Compensation judges are required to make credibility determinations and

analyze the persuasiveness of the expert reports in all cases before them. But those judges are applying the law—not diagnosing patients. As we stated in *Smith*, "the DSM is a guideline for medical and health professionals, not a checklist for judges." 931 N.W.2d at 397–98.

We see no reason to overturn *Smith* or our recent decisions upholding it, and we uphold it again today. *See, e.g.*, *Juntunen*, 982 N.W.2d at 739–40 ("[T]he job of the compensation judge is to determine whether the expert diagnoses have adequate foundation and, if both have adequate foundation, decide which of the professional diagnoses is more credible and persuasive . . . ." (quoting *Smith*, 931 N.W.2d at 396) (internal quotation marks omitted)); *Chrz*, 986 N.W.2d at 483 n.1 (noting that one expert's conclusions could not be used by the court because the expert had not relied on the DSM when diagnosing PTSD (relying on *Smith*, 931 N.W.2d at 396)). Accordingly, the WCCA did not err when refusing to alter the factual findings of the compensation judge.

The WCCA requested additional guidance on how *Smith* should be applied, noting concerns that compensation judges may be precluded from considering the DSM criteria in choosing between competing experts. *Tea*, 2023 WL 5094369, at *4 n.14. Our ruling in *Smith* in no way prohibits a compensation judge from reviewing the DSM criteria when determining which of multiple competing expert opinions is most credible and persuasive. Rather, *Smith* held that compensation judges are precluded from making their *own* diagnoses of the claimants before them. *Smith*, 931 N.W.2d at 397–99. Where the compensation judge is asked to determine which of two or more expert opinions is most credible and persuasive, the judge may consider all the evidence before them—including

14

the DSM criteria. A compensation judge may determine that a professional diagnosis of PTSD that the expert claims is supported by the DSM is, as a matter of fact, inconsistent with the DSM. But that factual finding must be in relation to evidence offered by another medical professional—not based upon the judge's own application of the DSM criteria to the employee's symptoms. Accordingly, the WCCA should not make its own diagnosis or conduct a legalistic analysis of the DSM in reviewing a compensation judge's decision.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the Workers' Compensation Court of Appeals.

Affirmed.