STATE OF MINNESOTA

IN SUPREME COURT

A24-0454

Workers' Compensation Court of Appeals                                    Hennesy, J.


Rodney Dean Bjornson,

                                         Relator,

vs.                                                                Filed: April 30, 2025
                                                                   Office of Appellate Courts

McNeilus Companies, Inc. and
Travelers Indemnity Company of America
and Property & Casualty
Insurance Company of Hartford
with claims administered by
Gallagher Bassett Services, Inc.,

                                         Respondents.

_____


David C. Wulff, Law Office of David C. Wulff, New Brighton, Minnesota, for relator.

David J. Klaiman, Casey A. Brown, Aafedt, Forde, Gray, Monson & Hager, PA, Minneapolis, Minnesota, for respondents.

_____


S Y L L A B U S

The Workers' Compensation Court of Appeals must assess whether there is evidence in the record that a reasonable mind might accept as adequate to support a compensation judge's determination that an employee's attorney recovered an

1

ascertainable dollar amount of medical benefits under Minn. Stat. § 176.081, subd. 1(a) (2024).

Reversed and remanded.

Considered and decided by the court without oral argument.

O P I N I O N

HENNESY, Justice.

In this workers' compensation case we are asked to decide whether the attorney for relator Rodney Dean Bjornson presented sufficient evidence to prove that he recovered an ascertainable dollar amount of medical benefits for Bjornson under the *Roraff* attorney fees statute.[1] Following an attorney fee hearing, the compensation judge ordered Bjornson's employer, McNeilus Companies, Inc. (McNeilus), along with its insurers (Insurers),[2] to pay *Roraff* fees to Bjornson's attorney. In determining that the dollar value of medical benefits was ascertainable, as is required to award *Roraff* fees, the compensation judge relied on an exhibit that the judge referred to as "itemized medical bills from the Mayo

---

[1]    In *Roraff v. State Dep't of Transp.*, 288 N.W.2d 15 (Minn. 1980), we created a method for an employee's attorney to recover attorney fees for securing payment of medical benefits on behalf of the employee. This is now codified at Minn. Stat. § 176.081 (2024).

[2]    McNeilus's insurers are Travelers Indemnity Company of America and Property & Casualty Insurance Company of Hartford. Travelers Indemnity Company of America was McNeilus's insurer at the time of Bjornson's first injury, and Property & Casualty Insurance Company of Hartford was McNeilus's insurer at the time of Bjornson's second injury.

Clinic."[3] The compensation judge noted that Bjornson had attached this document to his Employee's Claim Petition (Petition), which was introduced into evidence at the attorney fee hearing. On appeal, the Workers' Compensation Court of Appeals (WCCA) concluded that the dollar value of medical benefits was not ascertainable because the appellate record does not contain itemized bills from the Mayo Clinic. But the WCCA did not address whether the evidence that *is* part of the appellate record—including Bjornson's attorney's sworn testimony and the exhibit Bjornson's attorney created titled "Employee's Itemization of Benefits Claimed"—was adequate to support the compensation judge's findings. For this reason, we reverse and remand to the WCCA.

## FACTS

Relator Bjornson suffered two injuries while employed by McNeilus. He retained attorney David C. Wulff to represent him in a resulting workers' compensation dispute. Bjornson received treatment for his injuries at Mayo Clinic. McNeilus paid Bjornson's Mayo Clinic expenses out of a self-funded health insurance plan managed by United Healthcare Services (United).

In a stipulation for settlement, McNeilus and Insurers agreed that the treatment Bjornson received at Mayo Clinic was causally related to a work-related incident. McNeilus and Insurers agreed that they would "defend, indemnify, and save and hold Mr. Bjornson harmless from any claim for reimbursement or subrogation by Mayo Clinic" and

---

[3] The compensation judge referred to these documents as "itemized medical bills from the Mayo Clinic," but because the documents are not before this court, we cannot verify their contents. We refer to them as the "Mayo Clinic bills" to reflect the compensation judge's description.

"UnitedHealthcare." Pursuant to the settlement, Wulff received a contingent fee of $3,000.[4] The settlement noted that Bjornson claimed that United had paid $327,257.37 in medical benefits to Mayo Clinic but stated: "Due to the voluminous nature of these records, they are not attached hereto. They are, nonetheless, incorporated herein by reference." The settlement expressly reserved the issue of whether Wulff was entitled to *Roraff* fees for representing Bjornson.

*Roraff* fees are calculated according to Minn. Stat. § 176.081 (2022).[5] If an attorney establishes that a contingent fee is inadequate to fully compensate them for their representation, they are entitled to additional fees. Minn. Stat § 176.081, subd. 1(a)(1). If the dollar value of medical benefits awarded is "ascertainable," this value is used to calculate the additional fees. *Id.* *Roraff* fees under the statute in effect at the time of Bjornson's injury were capped at 20 percent of $130,000, or $26,000, per injury. Minn. Stat. § 176.081, subd. 1(a)–(b).

Wulff filed a statement of attorney fees and costs with the Office of Administrative Hearings seeking recovery of *Roraff* fees from McNeilus and Insurers. Wulff argued that, because the $3,000 contingent fee from the settlement was inadequate to compensate him, he was entitled to *Roraff* fees. He claimed an ascertainable dollar amount of medical

---

[4] This fee was not a *Roraff* fee but 20 percent of the lump sum of $15,000 paid to Bjornson for his temporary total disability and permanent partial disability claims. The settlement agreement contemplated a future claim for *Roraff* fees.

[5] As of October 1, 2024, the cap for *Roraff* fees has been increased from $26,000 to $55,000 per claim. Act of Oct. 1, 2024, ch. 97, § 4, 2024 Minn. Laws 819, 820 (codified as amended at Minn. Stat. § 176.081 (2024)). We apply the statute in effect at the time of injury. *Joyce v. Lewis Bolt & Nut Co.*, 412 N.W.2d 304, 307 (Minn. 1987).

benefits of $327,257.37—the amount he claimed that United paid Mayo Clinic. Because there were two dates of injury, Wulff argued that the total amount of the benefits received would entitle him to $52,000 in *Roraff* fees. Deducting the $3,000 he had already received, Wulff requested an additional $49,000 in *Roraff* fees from McNeilus and Insurers.

At the fee hearing, Wulff offered Exhibit G, a document he had created titled "Employee's Itemization of Benefits Claimed," which summarized Bjornson's Mayo Clinic bills United had paid. Wulff also offered Bjornson's Petition as Exhibit D. Attached to the Petition, as it appears in the record on appeal, is another copy of the "Employee's Itemization of Benefits Claimed." The compensation judge received Exhibits D and G into evidence. Wulff also testified at the hearing that United paid $327,257.37 in benefits to Mayo Clinic and that Exhibit G was an itemization of those benefits.

The compensation judge found that United paid Mayo Clinic an ascertainable dollar amount of $327,257.37 in medical benefits for Bjornson. The compensation judge further found that "[a]ttached to the Claim Petition were itemized medical bills from the Mayo Clinic showing the dates of service for each claimed medical visit, the CPT codes, the amount charged, and the amounts paid by the third-party administrator United Healthcare Services." The compensation judge awarded Wulff $49,000 in *Roraff* fees.

McNeilus and Insurers appealed to the WCCA. The WCCA concluded that the "itemized bills" from Mayo Clinic on which the compensation judge relied were not in the appellate record and reversed the compensation judge's award of *Roraff* fees due to the "paucity of evidence" regarding those bills. The WCCA did not, however, analyze whether the record evidence, including Wulff's testimony and exhibits, were otherwise adequate to

5

support the compensation judge's findings. The WCCA modified the *Roraff* fees to $500 pursuant to the statutory formula for unascertainable benefits amounts in Minn. Stat. § 176.081, subd. 1(a)(2).[6] Wulff appealed the WCCA's decision to our court.

## ANALYSIS

The sole issue before us is whether Bjornson's attorney, Wulff, submitted sufficient evidence of the ascertainable dollar value of medical benefits awarded as a result of Bjornson's Petition. Wulff asserts that when he submitted the Petition to the compensation judge he attached the Mayo Clinic bills but, due to an unspecified error, they were not included in the appellate record. McNeilus and Insurers contend that the Mayo Clinic bills were never offered into evidence and that the compensation judge made a "human mistake" when she indicated that they were attached to the Petition. Wulff responds that, even if the bills themselves were not received into evidence, his testimony and exhibits—including the Petition, Statement of Attorney Fees, Employee's Trial Brief, Stipulation for Settlement, and Employee's Itemization of Benefits Claimed—prove that United paid an ascertainable dollar value of medical benefits which can be used to calculate Wulff's *Roraff* fees.

Here, the WCCA was required to determine whether, "in the context of the record as a whole, [the findings of the compensation judge] are supported by evidence that a reasonable mind might accept as adequate." *Lagasse v. Horton*, 982 N.W.2d 189, 201

---

[6] If a contingent fee is inadequate to compensate an attorney and the dollar value of the benefit the opposing party paid is not ascertainable, the maximum attorney fee "is the amount charged in hourly fees for the representation or $500, whichever is less." Minn. Stat. § 176.081, subd. 1(a)(2).

(Minn. 2022) (alteration in original) (citation omitted) (internal quotation marks omitted). The WCCA did not make this determination. Instead, the WCCA noted that the "itemized bills" from the Mayo Clinic were not in the record and that there was a "paucity of evidence" regarding ascertainable medical benefits. The WCCA did not consider whether a reasonable person would find the remaining evidence in the record, including Wulff's testimony and exhibits, adequate to support the compensation judge's conclusion. Due to this error, we remand to the WCCA for findings consistent with this opinion. Minn. Stat. § 176.481 (2024) ("Where necessary the supreme court may remand the cause to the Workers' Compensation Court of Appeals for a new hearing or for further proceedings with such directions as the court deems proper.").

On remand, we direct the WCCA to do two things. First, the WCCA must remand this case to the compensation judge to clarify whether the "itemized medical bills from the Mayo Clinic" were the actual itemized bills or Exhibit G, the summary document of the voluminous medical records prepared by counsel. The record should not be reopened to accept additional evidence. Second, after this clarification, the WCCA must review the evidence in the record to determine whether a reasonable mind might accept that evidence (for example, Wulff's testimony and supporting exhibits, including the summary document) as adequate to support the compensation judge's conclusion.[7]

---

[7]     In an amended addendum, Wulff included the first 50 pages of itemized Mayo Clinic bills. McNeilus and Insurers moved to strike these pages as the bills do not appear in the record on appeal. Because the Mayo Clinic bills do not appear in the appellate record, respondents' motion to strike is granted. *See Hudson v. Trillium Staffing*, 896 N.W.2d 536, 541 n.5 (Minn. 2017) (granting a motion to strike an addendum because it "include[d] documents that were not part of the record before the WCCA").

**CONCLUSION**

For the foregoing reasons, we reverse the decision of the Workers' Compensation Court of Appeals and remand this matter to the Workers' Compensation Court of Appeals for further proceedings consistent with this opinion.

Reversed and remanded.